Christopher A. Turtzo; NV Bar No. 10253
**MORRIS, SULLIVAN & LEMKUL, LLP**
3960 Howard Hughes Parkway, Suite 400
Las Vegas, NV 89169
Tel: (702) 405-8100
Fax: (702) 405-8101
turtzo@morrissullivanlaw.com

Patrick Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Fatima Brizuela (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
Fax: (619) 233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com

[Additional attorneys listed on signature page.]

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL ROSENBAUM, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>                    Defendants. | CASE NO. 2:24-cv-00103-GMN-MDC<br><br>**PLAINTIFFS' MOTION FOR RECUSAL OF THE HONORABLE JUDGE GLORIA M. NAVARRO** |
| ANDREW CAPLEN INSTALLATIONS, LLC, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>                    Defendants. | CASE NO. 2:24-cv-00150-GMN-MDC |

| | |
|---|---|
| THESE PAWS WERE MADE FOR WALKIN' LLC, on behalf of itself and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>            Defendants. | CASE NO. 2:24-cv-00164-GMN-MDC |
| JOHN MELLOR, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>            Defendants. | CASE NO. 2:24-CV-00253-GMN-MDC |
| BRIAN COURTMANCHE, *et al.*,<br><br>            Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>            Defendants. | CASE NO. 2:24-cv-00198-GMN-MDC |
| LAURIE OLSEN SANTILLO, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>            Defendants. | CASE NO. 2:24-cv-00279-GMN-MDC |
| RICHARD BEAUMONT, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>            Defendants. | CASE NO. 2:24-cv-00298-GMN-MDC |

| | |
|---|---|
| BARBARA AND PHILLIP MACDOWELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>                    Defendants. | CASE NO. 2:24-cv-00325-GMN-MDC |
| WESTERN CAB COMPANY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>                    Defendants. | CASE NO. 2:24-cv-00401-GMN-MDC |

During the March 4, 2024 hearing, the Court disclosed that it owned a significant quantity of shares in Exxon Mobil Corporation ("Exxon"), and suggested Defendant Pioneer Natural Resources Company ("Pioneer") update its Certificate of Interested Parties to address Exxon's binding agreement to acquire Pioneer. ECF No. 149 ("Hearing Tr.") at 21:18-23:16; 25:17-26:8. The Court also noted that Exxon's pending acquisition likely requires the Court to recuse herself, regardless of whether that transaction was subject to certain closing conditions that have not presently been met. *Id.* On March 11, 2024, Pioneer filed a notice, confirming that in "October 2023, Pioneer entered into an Agreement and Plan of Merger with Exxon," (the "Acquisition Agreement") and that this agreement was proceeding, albeit subject to certain closing conditions. ECF No. 150 at 4. The terms of the Acquisition Agreement, disclosed to the SEC, show that Exxon does have a present interest in this litigation, including rights to veto settlements Pioneer might otherwise conclude.[1] Exxon expects the Acquisition Agreement will close within the second quarter of this fiscal year and "doesn't expect to see regulatory hurdles to the deal."[2] Given this, and the Court's proper concern that Exxon's proposed acquisition of Pioneer may cause individuals to "question[] [the Court's] decisions," regardless of whether the transaction is ultimately consummated (Hearing Tr. at 23:3-6; 25:17-26:8), Plaintiffs respectfully ask the Honorable Judge Gloria M. Navarro to recuse herself from these actions pursuant to 28 U.S.C. §§455(a) and/or 445(b)(4). Doing so now is appropriate, and will foreclose the prospect of the Court's impending decisions being questioned, including with regard to Defendants' proposed motion to transfer these actions to the Western District of Texas – a motion which could substantively impact the case given the differences in case law between circuits.[3] Following the parties' meet and confer, Defendants confirmed they intend to oppose this motion.

---

[1]   *See* Declaration of Patrick Coughlin in Support of Plaintiffs' Motion For Recusal ("Coughlin Decl."), Exhibit ("Ex.") 1.
[2]   Coughlin Decl., Ex. 2.  A recording of the presentation is available here: https://morganstanley.webcasts.com/viewer/event.jsp?ei=1660465&tp_key=6c146265d7.  The cited portion appears at 27:28-28:30.
[3]   Recognizing this, the Ninth Circuit has confirmed that motions to transfers should be decided by the trial judge. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

1

## I.  FACTUAL BACKGROUND

Plaintiffs in the above captioned matters[4] allege that Defendants[5] conspired to restrict the production of shale oil in the United States in violation of Section 1 of the Sherman Antitrust Act and various state antitrust, unfair competition, and consumer protection laws, harming Plaintiffs and the respective classes they seek to represent.

On March 4, 2024, the parties appeared before the Court for a hearing in the current action and discussed "Venue, Transfer of Venue, Consolidation, and Certificate of Interested Parties." Minutes of Proceedings, ECF. No. 147. All parties agreed that the Court had personal jurisdiction over Defendants and that venue was proper under Ninth Circuit authority. Hearing Tr. at 10:8-14:11. Defendants, however, disclosed that they intend to file a 28 U.S.C. §1404 motion to transfer the actions to U.S. District Court for the Western District of Texas. *Id.* at 13:5-9. The Court ordered Defendants to file that motion by March 22, 2024, with opposition and replies due on April 10, 2024 and April 22, 2024 respectively. ECF No. 147.

Concerning certificates of interested parties, the Court questioned Defendant Pioneer's failure to disclose Exxon as a third party with a financial interest in the case. Hearing Tr. at 21:6-23:16. Specifically, the Court stated for the record that "on October 23rd of 2023 Exxon Mobile [sic] announced the acquisition of [Pioneer] in an all-stock transaction that's valued at about $64 billion. . . . and that this [acquisition] is happening very soon." *Id.* at 21:22-22:7. The Court explained that she believed "[t]his [was] . . . a very large financial interest that needs to be

---

[4] *Rosenbaum v. Permian Resources Corp, et al.*, No. 2:24-cv-00103-GMN-MDC (D. Nev.), filed January 12, 2024; *Andrew Caplen Installations LLC v. Permian Resources Corp, et al.*, No. 2:24-cv-00150-GMN-MDC (D. Nev.), filed January 22, 2024; *These Paws Were Made For Walkin' LLC v. Permian Resources Corp, et al.*, No. 2:24-cv-00164-GMN-MDC (D. Nev.), filed January 24, 2024; *Courtmanche v. Periman Resources Corp. et al*, No. 2:24-cv-00198-GMN-MDC (D. Nev.), filed January 29, 2024; *Mellor v. Permian Resources Corp. et al*, No. 2:24-cv-00253-GMN-MDC (D. Nev.), filed February 6, 2024; *Santillo v. Periman Resources Corp. et al*, No. 2:24-cv-00279-GMN-MDC (D. Nev.), filed February 8, 2024; *Beaumont v. Periman Resources Corp. et al*, No. 2:24-cv-00298-GMN-MDC (D. Nev.), filed February 12, 2024; *MacDowell v. Permian Resources Corp. et al,* No. 2:24-cv-00325-GMN-MDC (D. Nev.), filed February 15, 2024; *Western Cab Company v. Periman Resources Corp. et al*, No. 2:24-cv-00401-GMN-MDC (D. Nev.), filed February 28, 2024.

[5] Permian Resources Corporation f/k/a Centennial Resource Development Inc., Chesapeake Energy Corporation ("Chesapeake"), Continental Resources Inc., Diamondback Energy, Inc., EOG Resources, Inc., Hess Corporation ("Hess"), Occidental Petroleum Corporation, and Pioneer.

accounted for. . . . because I own Exxon Mobile [sic] stock, and I have owned it since before I joined the bench, so more than 14 years." *Id*. at 22:17-20.  The Court then correctly noted that "if in fact Exxon does have a financial interest in this case . . . [she] wouldn't be able to address anything that's dispositive" and told counsel for Pioneer that "if you need to amend your certificate of interested parties to add Exxon in there" then she would "need to recuse" herself from the case. *Id.* at 22:21-23:4.

The Court then directed Pioneer to consider amending its certificate of interested parties "sooner rather than later" (*id.* at 23:3-6), rightly identifying the possibility that the Exxon transaction may lead to litigation regarding the propriety of the Court's decisions while the transaction was pending.  *Id*. at 23:4-8 ("I don't want anybody questioning my decisions later. . . . I own a lot of Exxon, and I've owned it for a long time."); *see also id.* at 25:17-26:8 (identifying Exxon's financial stake in the outcome of the litigation even absent closure of the proposed transaction).  The Court raised similar concerns regarding Defendant Hess and Chesapeake's pending M&A transactions with Chevron Corporation and Southwestern Energy Company, respectively, stressing the importance that the parties "find a judge who doesn't have any financial interest in this case so that we can go forward and be done with it."  *Id*. at 26:21-23.

On March 11, 2024, Defendant Pioneer filed a Notice confirming that in "October 2023, Pioneer entered into an Agreement and Plan of Merger with Exxon," and that this agreement is proceeding.  ECF No. 150 at 4.  Pioneer refused to update its Certificate of Interested Parties in the present case based on its position, after consulting the Federal and Local Rules, that it does "not need to supplement its Certificate at this time to add Exxon Mobil Corporation" as Exxon holds an "indirect" or "potential future interest" in the company, but that it "intends to promptly supplement its Certificate of Interested Parties to add Exxon when and if the merger is completed." *Id*.  Plaintiffs take no position whether Pioneer's Certificate of Interested Parties complies with D. Nev. LR 7.1-1, but note that the parties to the Acquisition Agreement have both recently expressed

3

their belief that they expect the agreement to close in the second quarter of 2024.[6] Moreover, both Exxon and Pioneer are required under the agreement to "use their reasonable best efforts to . . . [do] all things necessary, proper or advisable under Applicable Law to consummate the transaction[]."[7]

**II.    RECUSAL IS APPROPRIATE UNDER 28 U.S.C. §§455(a) AND (b)(4)**

Section 455(a) provides that any judge "shall disqualify [herself] in any proceeding in which [their] impartiality might reasonably be questioned." *See also U.S. v. Champlin*, 388 F. Supp. 2d 1177, 1182 (D. Haw. 2005) (noting that Section 455(a) "creates a broad, catchall provision"). Section 455(b) provides that a judge "shall also disqualify [her]self in the following circumstances: . . . (4) [she] knows that [she] . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ."[8] Thus, the Judge's financial interest need not be in a party to the proceeding, but merely "the subject matter in controversy," to trigger §455(b)(4)'s application.

Consequently, while "[j]udges are presumed to be honest and to serve with integrity" (*Bernard-Ex. v. Specialized Loan Servicing, LLC*, No. 2:23-cv-00885-GMN-VCF, 2023 WL 5979793, at *1 (D. Nev. Aug. 11, 2023) (Navarro J.)), "[f]ederal judges are, however, required . . . to recuse themselves from any proceeding in which their impartiality might reasonably be questioned, even where no conflict of interest exists." *Id*. "The standard for judging the appearance of partiality is objective: 'whether a reasonable person with knowledge of all the facts

---

[6] *See* Coughlin Decl., Ex. 2 (On March 6, 2024, Exxon senior vice president Neil Chapman said, "[w]e still think second quarter is a good estimate for when we can close the transaction."); and Coughlin Decl., Ex. 3 ("On February 7, 2024, Pioneer "announced that the Company received shareholder approval for the pending merger with Exxon" and "expects that the merger will be completed in the second quarter of 2024."). *See* Coughlin Decl., Ex. 1 (Section 10(b)(i) allows the parties to terminate the Acquisition Agreement if it fails to close by October 10, 2024).

[7] Coughlin Decl., Ex. 1 (Section 8.01).

[8] "Financial interest" is defined in 28 U.S.C. §455(b)(4) as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party," with some inapplicable exceptions.

4

1 would conclude that the judge's impartiality might reasonably be questioned.'" *Id.* (quoting *U.S.*
2 *v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)).

3       "Analysis of a recusal motion is 'necessarily-fact driven' and 'must be guided . . . by an
4 independent examination of the unique facts and circumstances of the particular claim at issue.'"
5 *Id*. (quoting *U.S. v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)).  Although there is no hard-and-
6 fast "rule requiring judges to recuse themselves from all cases that might remotely affect nonparty
7 companies in which they own stock," *In re Kansas Pub. Ret. Sys.*, 85 F.3d 1353, 1362 (8th Cir.
8 1996), where the litigation would have a direct effect on the interested nonparty in whom the Court
9 has a financial interest, courts commonly recuse themselves nevertheless, as such interest could
10 lead reasonable persons to question the court's impartiality.  *See, e.g.*, *Sollenbarger v. Mountain*
11 *States Tel. & Tel. Co.*, 706 F. Supp. 776, 780-81 (D.N.M. 1989) (holding that the "direct effect
12 [of] the litigation" upon four nonparty telephone companies in which the Judge owned stock
13 required recusal); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 867-68
14 (1988) (holding that a judge who was a trustee of a university was required to recuse himself from
15 a case in which the university had an interest, although the university was not a party).

16       Here, the Court has identified a basis, her substantial and longstanding ownership of Exxon
17 stock, for which a "'reasonable person with knowledge of all the facts would conclude that the
18 judge's impartiality might reasonably be questioned.'" *Bernard-Ex.*, 2023 WL 5979793, at *1.
19 Regardless of Pioneer's refusal to supplement its Certificate of Interested Parties, as the Court
20 correctly identified, it does not matter that Exxon does not yet – but soon will – have a present
21 ownership interest in Pioneer.  Hearing Tr. at 25:17-26:8.  A reasonable observer could conclude
22 that Exxon, and therefore the Court, has a financial interest in the outcome of this litigation, given
23 the substantial consideration payable under the Acquisition Agreement (~$64bn enterprise value)[9]
24 and Pioneer's significant potential liability should Plaintiffs' claims be proven given the size of

---

[9]    *See* Coughlin Decl., Ex. 4 (Exxon press release announcing the transaction and its purported value).

5

the markets Pioneer and its co-Defendants' allegedly price-fixed.[10]  As the Court noted, the lawsuits' outcome and prospects could impact the value of Exxon's acquisition of Pioneer, the price Exxon would be willing to pay for Pioneer, and/or Exxon's resulting market value.[11]  *Id*.

The terms of the Acquisition Agreement reinforce the conclusion that Exxon has a present interest in this litigation.  First, the Acquisition Agreement provides that the Exxon subsidiary that will merge with Pioneer will assume all Pioneer's liabilities upon closing.[12]  Second, Pioneer represented and warranted that it was in compliance with all applicable laws, notwithstanding its executives' participation in the antitrust infringement laid out in Plaintiffs' complaint, including their attendance at the CERA Week conferences.[13]  Breaches of this representation and warranty that amount to a "Company Material Adverse Effect"[14] permit Exxon to walk away from the Acquisition Agreement.[15]  Third, Pioneer cannot settle any legal action – including the present claims – with a payment in the excess of $10 million without Exxon's approval.[16]

The present situation is therefore distinct from *In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir. 1986), where recusal was improper where the suit named 23 banks as defendants, the judge

---

[10]  Each Plaintiff in the *Rosenbaum* action alleged that they "purchased retail gasoline on a weekly basis" and "paid higher gas prices" because of Defendants conduct.  *See Rosenbaum* Complaint, ¶¶17-19 (ECF No. 1).  The Plaintiffs in the other actions similarly allege regular purchases of products (gas, diesel fuel, home heating oil, and marine fuel) at prices that were inflated due to Defendants' conduct.

[11]  *See* Coughlin Decl., Ex. 5 (Exxon 2023 Form 10-K reporting on pages 66 and 119 that "Exxon Mobil Corporation continued its share repurchase program for up to $50 billion in shares through 2024, including the purchase of 162 million shares at a book value of $17.5 billion in 2023.  In its 2023 Corporate Plan Update released December 6, 2023, the Corporation stated that after the Pioneer transaction closes, the go-forward share repurchase program pace is expected to increase to $20 billion annually through 2025, assuming reasonable market conditions. . . . Based on the October 5 closing price for ExxonMobil shares, the fixed exchange rate of 2.3234 per Pioneer share, and Pioneer's outstanding net debt, the implied enterprise value of the transaction was approximately $65 billion.").

[12]  *See* Coughlin Decl., Ex. 1 (Sections 2.01(a) and (d)).

[13]  *Id*. (Section 4.12).

[14]  *Id*. (Company Material Adverse Effect is defined in Section 1.01 as "any event, circumstance, development, occurrence, fact, condition, effect or change that is, or would reasonably be expected to become, individually or in the aggregate, materially adverse to (i) the condition (financial or otherwise), business, assets, or results of operations of [Pioneer] and its Subsidiaries, taken as a whole. . . . or (ii) the ability of [Pioneer] to consummate the transactions contemplated by this Agreement.")

[15]  *Id*. (Sections 9.02(b), 9.02(c) and 10(c)).

[16]  *See id*. (Section 6.01(o)).  *See also* Section 8.07(c) (requiring Pioneer to notify Exxon of the current actions).

had a large investment in a nonparty bank, and the potential effect on the banking industry overall was too "indirect and speculative" for recusal. Here the Court has a large financial interest in a non-party whose financial position will be directly impacted by these suits.

The risk that a reasonable observer would conclude that the Court's impartiality might reasonably be questioned is heightened by the significant public interest that this litigation has generated to date.[17]

As the Court and counsel for the parties know, large-scale class action antitrust litigation has the potential to endure for years. Even if that were not the case, Exxon anticipates that the acquisition will be completed in the second quarter of this fiscal year and "doesn't expect to see regulatory hurdles to the deal."[18] The acquisition, therefore, is likely to close and secure for Exxon a direct ownership interest in Pioneer before any substantive issues in this controversy are resolved, including Defendants' impending motion to transfer.

Given this, and Exxon's present financial interest in the outcome of this litigation, Plaintiffs respectfully submit that the proper course is for the Court to recuse herself now, thereby avoiding both disrupting the case at a later date and the danger of the Court's impartiality being questioned. *See Silver State Intellectual Techs., Inc. v. Foursquare Labs, Inc.*, No. 2:12-cv-01308-RCJ-PAL, 2013 U.S. Dist. LEXIS 33842, at *9 (D. Nev. Mar. 11, 2013) ("[r]ecusal at some later date could seriously disrupt the case whereas recusal at this early stage would be relatively if not completely harmless").

Plaintiffs therefore respectfully ask that the Court recuse herself pursuant to Federal Rule of Judiciary and Judicial Procedure 28 U.S.C. §455(a) and (b)(4).

DATED this 19th day of March, 2024

---

[17]  *See e.g.*, Coughlin Decl., Ex. 6 (Reuters reporting on the litigation).
[18]  *See* Coughlin Decl., Ex 2.

7

| | | |
|---|---|---|
| 1 | **EGLET ADAMS EGLET HAM & HENRIOD** | **MORRIS, SULLIVAN & LEMKUL, LLP** |
| 2 | /s/Robert T. Eglet | /s/Christopher A. Turtzo |
| | Robert T. Eglet; NV Bar No. 3402 | Christopher A. Turtzo; NV Bar No. 10253 |
| 3 | Artemus W. Ham, IV; NV Bar No. 7001 | 3960 Howard Hughes Parkway, Suite 400 |
| | Erica D. Entsminger; NV Bar No. 7432 | Las Vegas, NV 89169 |
| 4 | 400 South Street, Suite 400 | Tel: (702) 405-8100 |
| | Las Vegas, Nevada 89101 | Fax: (702) 405-8101 |
| 5 | Telephone: (702): 450-5400 | turtzo@morrissullivanlaw.com |
| | Facsimile: (702) 450-5451 | |
| 6 | eservice@egletlaw.com | *Local Counsel for Plaintiffs Daniel Rosenbaum, Reneldo Rodriguez, and Thomas Caron* |
| 7 | *Local Counsel for Plaintiffs Andrew Caplen Installations LLC and Edward Allegretti, d/b/a Alfred Auto Center, Plaintiff Western Cab Company* | |
| 8 | | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| 9 | | Patrick J. Coughlin (*pro hac vice*) |
| 10 | **COHEN MILSTEIN SELLERS & TOLL PLLC** | Carmen Medici (*pro hac vice*) |
| | | Fatima Brizuela (*pro hac vice*) |
| 11 | Brent W. Johnson (*pro hac vice*) | Daniel J. Brockwell (*pro hac vice*) |
| | Benjamin Brown (*pro hac vice*) | 600 W. Broadway, Suite 3300 |
| 12 | Robert W. Cobbs (*pro hac vice*) | San Diego, CA 92101 |
| | Nina Jaffe-Geffner (*pro hac vice*) | Tel: (619) 233-4565 |
| 13 | 1100 New York Avenue NW, 5th Floor | pcoughlin@scott-scott.com |
| | Washington, DC 20005 | cmedici@scott-scott.com |
| 14 | Telephone: (202) 408-4600 | fbrizuela@scott-scott.com |
| | Facsimile: (202) 408-4699 | dbrockwell@scott-scott.com |
| 15 | bjohnson@cohenmilstein.com | |
| | bbrown@cohenmilstein.com | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| 16 | rcobbs@cohenmilstein.com | |
| | njaffegeffner@cohenmilstein.com | Patrick McGahan (*pro hac vice*) |
| 17 | | Michael Srodoski (*pro hac vice*) |
| | **COHEN MILSTEIN SELLERS & TOLL PLLC** | Isabella De Lisi (*pro hac vice*) |
| 18 | | 156 S Main Street |
| | Michael Eisenkraft (*pro hac vice*) | P.O. Box 192 |
| 19 | Christopher Bateman (*pro hac vice*) | Colchester, CT 06415 |
| | Aaron Marks (*pro hac vice*) | Tel: (860) 537-5537 |
| 20 | 88 Pine Street, 14th Floor | pmcgahan@scott-scott.com |
| | New York, New York 10005 | msrodoski@scott-scott.com |
| 21 | Telephone: (212) 883-7797 | idelisi@scott-scott.com |
| | meisenkraft@cohenmilstein.com | |
| 22 | cbateman@cohenmilstein.com | |
| | amarks@cohenmilstein.com | |
| 23 | | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| | *Counsel for Plaintiffs Andrew Caplen Installations LLC and Edward Allegretti, d/b/a Alfred Auto Center* | |
| 24 | | Patrick Rodriguez (*pro hac vice*) |
| | | 230 Park Ave., 17th Floor |
| 25 | **COHEN MILSTEIN SELLERS & TOLL PLLC** | New York, NY 11069 |
| | | Tel: (212) 223-6444 |
| 26 | Brent W. Johnson (*pro hac vice*) | prodriguez@scott-scott.com |
| | Robert W. Cobbs (*pro hac vice*) | |
| 27 | 1100 New York Avenue NW, 5th Floor | *Counsel for Plaintiffs Daniel Rosenbaum, Reneldo Rodriguez, and Thomas Caron* |
| | Washington, DC 20005 | |
| 28 | Telephone: (202) 408-4600 | |

| | | |
|---|---|---|
| 1 | Facsimile: (202) 408-4699<br>bjohnson@cohenmilstein.com<br>rcobbs@cohenmilstein.com | **THE BOURASSA LAW GROUP** |
| 2 | | |
| 3 | **COHEN MILSTEIN SELLERS & TOLL PLLC** | /s/Mark J. Bourassa<br>Mark J. Bourassa, Esq. (NBN 7999)<br>Jennifer A. Fornetti, Esq. (NBN 7644) |
| 4 | Michael Eisenkraft (*pro hac vice*)<br>88 Pine Street, 14th Floor<br>New York, New York 10005 | Valerie S. Christian Esq. (NBN 14716)<br>2350 W. Charleston Blvd., Suite 100<br>Las Vegas, Nevada 89102 |
| 5 | Telephone: (212) 883-7797<br>meisenkraft@cohenmilstein.com | Telephone: (702) 851-2180<br>Facsimile: (702) 851-2189 |
| 6 | | mbourassa@blgwins.com<br>jfornetti@blgwins.com |
| 7 | *Counsel for Plaintiff Western Cab Company* | vchristian@blgwins.com |
| 8 | **MUCKLEROY LUNT, LLC** | *Local Counsel for John Mellor* |
| 9 | /s/ Martin A. Muckleroy<br>Martin A. Muckleroy | **GROSS KLEIN PC**<br>Stuart G. Gross (*Pro Hac Vice*) |
| 10 | 6077 S. Fort Apache Rd., Ste 140<br>Las Vegas, NV 89148 | Travis H. Smith (*Pro Hac Vice*)<br>The Embarcadero |
| 11 | Phone (702) 907-0097<br>Fax (702) 938-4065 | Pier 9, Suite 100<br>San Francisco, CA 94111 |
| 12 | martin@muckleroylunt.com | Telephone: (415) 671-4628<br>Facsimile: (415) 480-6688 |
| 13 | *Local Counsel for These Paws Were Made For Walkin' LLC* | sgross@grosskleinlaw.com<br>tsmith@grosskleinlaw.com |
| 14 | **LOCKRIDGE GRINDAL NAUEN PLLP** | **SCHNEIDER WALLACE COTTRELL** |
| 15 | Brian D. Clark (*pro hac vice*)<br>Rebecca A. Peterson (*pro hac vice*) | **KONECKY, LLP**<br>Todd M. Schneider (*Pro Hac Vice* forthcoming) |
| 16 | Stephen J. Teti (*pro hac vice*)<br>Arielle S. Wagner (*pro hac vice*) | Matthew S. Weiler (*Pro Hac Vice* forthcoming)<br>2000 Powell Street, Suite 1400 |
| 17 | 100 Washington Avenue S, Suite 2200<br>Minneapolis, MN 55401 | Emeryville, CA 94608<br>Telephone: (415) 421-7100 |
| 18 | Phone: (612) 339-6900<br>Fax: (612) 339-0981 | Facsimile: (415) 421-7105<br>tschneider@schneiderwallace.com |
| 19 | bdclark@locklaw.com<br>rapeterson@locklaw.com | mweiler@schneiderwallace.com |
| 20 | sjteti@locklaw.com<br>aswagner@locklaw.com | *Counsel for John Mellor* |
| 21 | *Counsel for These Paws Were Made For Walkin' LLC* | **SALTZMAN MUGAN DUSHOFF** |
| 22 | | |
| 23 | **LAW OFFICES OF ANDREW M. LEAVITT, ESQ.** | /s/Matthew T. Dushoff<br>Matthew T. Dushoff, Esq. (Nevada Bar No. 004975) |
| 24 | /s/ Robert F. Purdy | William A. Gonzales, Esq. (Nevada Bar No. 015230) |
| 25 | Robert F. Purdy (NV Bar No. 6097)<br>633 South Seventh Street | 1835 Village Center Circle |
| 26 | Las Vegas, NV 89101<br>Tel.: (702) 382-2800 | Las Vegas, Nevada 89134<br>Telephone: (702) 405-8500 |
| 27 | Fax: (702) 382-7438<br>Robert.purdy@andrewleavittlaw.com | Facsimile: (702) 405-8501<br>mdushoff@nvbusinesslaw.com |
| 28 | | wgonzales@nvbusinesslaw.com |

| | |
|---|---|
| *Local Counsel for Plaintiff Laurie Olsen Santillo, Plaintiffs Brian Courtmanche, Laura J. Faber, Patricia Mancieri, David Silver, and Josselyn's Getaway Log Cabins LLC, Plaintiff Richard Beaumont* | *Local Counsel for Barbara and Phillip MacDowell* |

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Jennifer Sprengel (*pro hac vice*)
Daniel O. Herrera (*pro hac vice*)
Kaitlin Naughton (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel.: 312.782.4880
Fax: 312.782.4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
knaughton@caffertyclobes.com

*Counsel for Plaintiff Laurie Olsen Santillo*

**PEARSON WARSHAW, LLP**
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pwfirm.com
bpouya@pwfirm.com

**PEARSON WARSHAW, LLP**
Jill M. Manning (Bar No. 178849)
Neil J. Swartzberg (Bar No. 215133)
555 Montgomery St., Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
jmanning@pwfirm.com
nswartzberg@pwfirm.com

*Counsel for Plaintiff Richard Beaumont*

**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan (*pro hac vice*)
Douglas A. Millen (*pro hac vice*)
Michael E. Moskovitz
Nia-Imara Binns
100 Tri-State International, Suite 128
Lincolnshire, Illinois 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
nbinns@fklmlaw.com

**SPECTOR ROSEMAN & KODROFF, P.C.**
William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
Diana J. Zinser (*pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 466-6611
bcaldes@srkattorneys.com
jspector@srkattorneys.com
dzinser@srkattorneys.com

**REINHARDT WENDORF & BLANCHFIELD**
Garrett D. Blanchfield (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
332 Minnesota Street, Suite W1050
St. Paul, MN 55101
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com

**MCLAFFERTY LAW FIRM, P.C.**
David P. McLafferty (*pro hac vice* forthcoming)
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 940-4000
dmclafferty@mclaffertylaw.com

*Counsel for Barbara and Phillip MacDowell*

10

**FREED KANNER LONDON & MILLEN LLC**
Kimberly A. Justice (*Pro Hac Vice* forthcoming)
Jonathan M. Jagher (*Pro Hac Vice* forthcoming)
923 Fayette Street
Conshohocken, Pennsylvania 19428
Telephone: (610) 234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**AETON LAW PARTNERS LLP**
Jonathan M. Shapiro (*Pro Hac Vice* forthcoming)
311 Centerpoint Drive
Middletown, Connecticut 06475
Telephone: (860) 724-2160
jms@aetonlaw.com

*Counsel for Plaintiffs Brian Courtmanche, Laura J. Faber, Patricia Mancieri, David Silver, and Josselyn's Getaway Log Cabins LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of MORRIS, SULLIVAN & LEMKUL, LLP, and that I caused a true and correct copy of the foregoing NOTICE OF RELATED CASES PURSUANT TO LOCAL RULE 42.1 to be served via Electronic Service to all parties and counsel identified on the CM/ECF System via electronic notification on this 19th day of March, 2024.

/s/Dominique Rocha

An Employee of Morris, Sullivan & Lemkul