GIBSON, DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE (*pro hac vice*)
JAY P. SRINIVASAN (*pro hac vice*)
S. CHRISTOPHER WHITTAKER (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

HOWARD & HOWARD
ATTORNEYS PLLC
W. WEST ALLEN (NV Bar No. 5566)
3800 Howard Hughes Parkway
Suite 1000
Las Vegas, NV  89169
Telephone:  702.667.4843
Facsimile:  702.567.1568
Wallen@howardandhoward.com

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
BORIS BERSHTEYN (*pro hac vice*)
KAREN HOFFMAN LENT (*pro hac vice*)
One Manhattan West
New York, NY  10001-8602
Telephone:  212.735.3000
Facsimile:  917.777.2000
boris.bershteyn@skadden.com
karen.lent@skadden.com

*Attorneys for Defendant*
*PIONEER NATURAL RESOURCES COMPANY*

[*Additional Attorneys Listed In Signature Block*]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ROSENBAUM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PERMIAN RESOURCES CORP., *et al.*, <br><br> Defendants. | CASE NO. 2:24-cv-00103-GMN-MDC <br><br> **DEFENDANTS' JOINT MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **ORAL ARGUMENT REQUESTED** |

*[Caption Continues on Following Page]*

ANDREW CAPLEN INSTALLATIONS, LLC, *et al.*,

              Plaintiffs,

    v.

PERMIAN RESOURCES CORP., *et al.*,

              Defendants.

CASE NO. 2:24-cv-00150-GMN-MDC

---

THESE PAWS WERE MADE FOR WALKIN' LLC, *et al.*,

              Plaintiffs,

    v.

PERMIAN RESOURCES CORP., *et al.*,

              Defendants.

CASE NO. 2:24-cv-00164-GMN-MDC

---

JOHN MELLOR, on behalf of himself and all others similarly situated,

              Plaintiff,

    v.

PERMIAN RESOURCES CORP., *et al.*,

              Defendants.

CASE NO. 2:24-CV-00253-GMN-MDC

---

BRIAN COURTMANCHE, *et al.*,

              Plaintiffs,

    v.

PERMIAN RESOURCES CORP., *et al.*,

              Defendants.

CASE NO. 2:24-cv-00198-GMN-MDC

*[Caption Continues on Following Page]*

Gibson, Dunn & Crutcher LLP

| | |
|---|---|
| LAURIE OLSEN SANTILLO, on behalf of herself and all others similarly situated, | CASE NO. 2:24-cv-00279-GMN-MDC |
| Plaintiff, | |
| v. | |
| PERMIAN RESOURCES CORP., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| RICHARD BEAUMONT, on behalf of himself and all others similarly situated, | CASE NO. 2:24-cv-00298-GMN-MDC |
| Plaintiff, | |
| v. | |
| PERMIAN RESOURCES CORP., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| BARBARA AND PHILLIP MACDOWELL, individually and on behalf of all others similarly situated, | CASE NO. 2:24-cv-00325-GMN-MDC |
| Plaintiff, | |
| v. | |
| PERMIAN RESOURCES CORP., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| WESTERN CAB COMPANY, individually and on behalf of all others similarly situated, | CASE NO. 2:24-cv-00401-GMN-MDC |
| Plaintiff, | |
| v. | |
| PERMIAN RESOURCES CORP., *et al.*, | |
| Defendants. | |

Gibson, Dunn &
Crutcher LLP

## DEFENDANTS' JOINT MOTION TO
## <u>TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)</u>

Defendants Permian Resources Corp. ("Permian"), Chesapeake Energy Corporation ("Chesapeake"), Continental Resources Inc. ("Continental"), Diamondback Energy, Inc. ("Diamondback"), EOG Resources, Inc. ("EOG"), Hess Corporation ("Hess"), Occidental Petroleum Corporation ("Occidental"), and Pioneer Natural Resources Company ("Pioneer"), by and through their counsel, hereby move this Court for an Order transferring the above-captioned actions to the United States District Court for the Western District of Texas (Midland/Odessa Division) or, in the alternative, to the United States District Court for the Northern District of Texas or the United States District Court for the Southern District of Texas.  This Motion is made under 28 U.S.C. § 1404(a) and is based on the attached Memorandum of Points and Authorities and supporting documentation, the papers and pleadings on file, and any oral argument this Court may allow.

Respectfully submitted,[1]

Dated:  March 22, 2024

*/s/ Samuel G. Liversidge*
Samuel G. Liversidge (*pro hac vice*)
Jay P. Srinivasan (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

Boris Bershteyn (*pro hac vice*)
Karen Hoffman Lent (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
One Manhattan West
New York, NY  10001-8602
Telephone:  212.735.3000

*/s/ Michael W. Scarborough*
Michael W. Scarborough (*pro hac vice*)
Dylan I. Ballard (*pro hac vice*)
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979–6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald (*pro hac vice*)
Adam L. Hudes (*pro hac vice*)
Stephen M. Medlock (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6500
cseebald@velaw.com

---

[1] The *pro hac vice* designations reflect the admission status of counsel in *Rosenbaum*, Case No. 2:24-cv-00103-GMN-MDC.  *Pro hac vice* applications in the other related cases are forthcoming to the extent required by the Court.

Gibson, Dunn & Crutcher LLP

1  boris.bershteyn@skadden.com                    ahudes@velaw.com
   karen.lent@skadden.com                         smedlock@velaw.com
2
   W. West Allen (NV Bar No. 5566)                Kristen T. Gallagher (NV Bar No. 9561)
3  HOWARD & HOWARD ATTORNEYS                       McDONALD CARANO LLP
     PLLC                                         2300 West Sahara Ave., Suite 1200
4  3800 Howard Hughes Parkway, Suite 1000         Las Vegas, NV 89102
   Las Vegas, NV 89169                            kgallagher@mcdonaldcarano.com
5  Telephone:  702.667.4843
   wallen@howardandhoward.com                     *Attorneys for Defendant*
6                                                 *PERMIAN RESOURCES CORPORATION*
   *Attorneys for Defendant*
7  *PIONEER NATURAL RESOURCES*
   *COMPANY*
8

9  /s/ J. Colby Williams                          /s/ Christopher E. Ondeck
10 J. Colby Williams, Esq. (NV Bar No. 5549)      Christopher E. Ondeck (*pro hac vice*)
   Philip R. Erwin, Esq. (NV Bar No. 11563)       Stephen R. Chuk (*pro hac vice*)
11 CAMPBELL & WILLIAMS                            PROSKAUER ROSE LLP
   710 South Seventh Street, Suite A              1001 Pennsylvania Avenue NW
12 Las Vegas, Nevada 89101                        Washington, DC 20004
   Telephone:  (702) 382-5222                     Telephone: (202) 416-6800
13 jcw@cwlawlv.com                                condeck@proskauer.com
   pre@cwlawlv.com                                schuk@proskauer.com

14 Marguerite M. Sullivan (*pro hac vice*)        Kyle A. Casazza (*pro hac vice*)
   Jason D. Cruise (*pro hac vice forthcoming*)   PROSKAUER ROSE LLP
15 LATHAM & WATKINS LLP                           2029 Century Park East, Suite 2400
   555 Eleventh Street, N.W., Suite 1000          Los Angeles, CA 90067-3010
16 Washington, D.C. 20004                         Telephone: (310) 284-5677
   Telephone: (202) 637-2200                      kcasazza@proskauer.com
17 Marguerite.Sullivan@lw.com
   Jason.Cruise@lw.com                            Michael Burrage (*pro hac vice*)
18                                                WHITTEN BURRAGE
   Lawrence E. Buterman (*pro hac vice*)          512 North Broadway Avenue, Ste 300
19 LATHAM & WATKINS LLP                           Oklahoma City, OK 73102
   1271 Avenue of the Americas                    Telephone: (888) 783-0351
20 New York, NY 10020                             mburrage@whittenburragelaw.com
   Telephone:  (212) 906-1200
21 Lawrence.Buterman@lw.com                       *Attorneys for Defendant*
                                                  *CONTINENTAL RESOURCES, INC.*
22 *Attorneys for Defendant*
   *CHESAPEAKE ENERGY CORPORATION*
23

24 /s/ Kristen L. Martini                         /s/ John M. Taladay
25 Kristen L. Martini (NV Bar No. 11272)          John M. Taladay (*pro hac vice*)
   E. Leif Reid (NV Bar No. 5750)                 Christopher Wilson (*pro hac vice*)
26 LEWIS ROCA LLP                                 Kelsey Paine (*pro hac vice*)
   3993 Howard Hughes Parkway, Suite 600          Megan Tankel (*pro hac vice*)
27 Las Vegas, NV 89169                            BAKER BOTTS L.L.P.
   Telephone:  (775) 321-3415                     700 K Street N.W.
28 lreid@lewisroca.com                            Washington, D.C. 20001-5692
   Jeffrey L. Kessler (*pro hac vice*)            Telephone:  (202) 639-7909
   Jeffrey J. Amato (*pro hac vice*)              john.taladay@bakerbotts.com

Gibson, Dunn &
Crutcher LLP

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 294-6700
jkessler@winston.com
jamato@winston.com

Thomas M. Melsheimer (*pro hac vice*)
Thomas B. Walsh, IV (*pro hac vice*)
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone:  (212) 294-6700
tmelsheimer@winston.com
twalsh@winston.com

*Attorneys for Defendant*
*DIAMONDBACK ENERGY, INC.*

christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com
megan.tankel@bakerbotts.com

James J. Pisanelli, Esq. (NV Bar No. 4027)
Debra L. Spinelli, Esq. (NV Bar No. 9695)
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone:  (702) 214-2100
jjp@pisanellibice.com
dls@pisanellibice.com

*Counsel for Defendant*
*EOG RESOURCES, INC.*

/s/ Nicholas J. Santoro
Nicholas J. Santoro (NV Bar No. 532)
F. Thomas Edwards (NV Bar No. 9549)
HOLLEY DRIGGS LTD
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:  (702) 791-0308
nsantoro@nevadafirm.com
tedwards@nevadafirm.com

Kevin S. Schwartz (*pro hac vice*)
David A. Papirnik (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
kschwartz@wlrk.com
dapapirnik@wlrk.com

*Attorneys for Defendant*
*HESS CORPORATION*

/s/ Patrick G. Byrne
Patrick G. Byrne (NV Bar No. 7636)
Bradley T. Austin (NV Bar No. 13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone:  (702) 784-5200
pbyrne@swlaw.com
baustin@swlaw.com

Devora W. Allon (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com
Telephone: 212-446-5967

Jeffrey J. Zeiger (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
jzeiger@kirkland.com
Telephone: 312-862-3237

Akhil K. Gola (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
akhil.gola@kirkland.com
Telephone: 202-389-3256

*Attorneys for Defendant*
*OCCIDENTAL PETROLEUM*
*CORPORATION*

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 2

III.  LEGAL STANDARD........................................................................................... 6

IV.  ARGUMENT ....................................................................................................... 7

    A.    Plaintiffs Could Have Sued Defendants In The Western District Of Texas.......... 7

        1.    Personal Jurisdiction Is Proper In Texas...................................................... 8

        2.    Venue Is Proper In The Western District Of Texas.................................... 9

        3.    The Ninth Circuit's Interpretation Of The Clayton Act Also
            Supports Transfer To The Western District Of Texas ............................. 11

    B.    The Interests Of Justice And Convenience Favor Transfer ................................ 12

        1.    The Parties' Contacts With The Western District Of Texas Are
            Much More Extensive Than Their Contacts With This Forum ............... 12

        2.    Plaintiffs Allege The Conduct Giving Rise To Their Claims
            Occurred In Texas................................................................................... 15

        3.    The Western District Of Texas Is Less Expensive And Far More
            Convenient For Potential Witnesses Than The District Of Nevada ........ 17

        4.    The Western District Of Texas Will Have A Greater Ability To
            Compel Third-Party Witnesses To Testify Than This Court................... 18

        5.    Texas Offers Greater Access To Sources Of Proof ................................. 19

        6.    Most Defendants Produce And Sell The Majority Of Their Shale
            Oil In Texas............................................................................................ 20

        7.    Plaintiffs' Choice Of Forum Is Entitled No Weight ............................... 21

        8.    Texas And Nevada Are Equally Familiar With The Governing
            Law But Texas Courts Are More Familiar With The Oil And Gas
            Industry .................................................................................................. 22

V.   CONCLUSION.................................................................................................. 23

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

1

**Page**

2

### Cases

3

*Absorption Pharms., LLC v. Reckitt Benckiser, LLC,*
  2017 WL 5986122 (D. Nev. Dec. 1, 2017)........................................................17, 19

4

*Access Telecom, Inc. v. MCI Telecomms. Corp.,*
  197 F.3d 694 (5th Cir. 1999) ......................................................................................11

5

6

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,*
  368 F.3d 1174 (9th Cir. 2004) ....................................................................................11

7

*Avery Dennison Corp. v. 3M Co.,*
  2011 WL 13116731 (C.D. Cal. Feb. 2, 2011)..............................................................11

8

9

*Barnstormers, Inc. v. Wing Walkers, LLC,*
  2010 WL 2754249 (S.D. Cal. July 9, 2010) ................................................................22

10

*Briskin v. Shopify, Inc.,*
  87 F.4th 404 (9th Cir. 2023) .........................................................................................8

11

12

*CE Distrib., LLC v. New Sensor Corp.,*
  380 F.3d 1107 (9th Cir. 2004) ....................................................................................12

13

*Conner v. Kelly,*
  2023 WL 2842147 (D. Nev. Apr. 6, 2023)..............................................................14, 16

14

15

*Cont'l Auto. Sys., Inc. v. Avanci, LLC,*
  2019 WL 6735604 (N.D. Cal. Dec. 11, 2019)..............................10, 11, 13, 16, 21

16

*Contact Lumber Co. v. P.T. Moges Shipping Co.,*
  918 F.2d 1446 (9th Cir. 1990) ....................................................................................18

17

18

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014)........................................................................................................8

19

*Daniel v. Am. Bd. of Emergency Med.,*
  428 F.3d 408 (2d Cir. 2005)........................................................................................11

20

*Discover Growth Fund, LLC v. Clickstream Corp.,*
  2023 WL 4363650 (D. Nev. July 6, 2023) ................................................................12

21

22

*Dooley v. Nev. Gold Mines, LLC,*
  2022 WL 867265 (D. Nev. Mar. 23, 2022) ..................................................................7

23

*Earth Island Inst. v. Quinn,*
  56 F. Supp. 3d 1110 (N.D. Cal. 2014) ........................................................................22

24

25

*Editorial Planeta Mexicana, S.A. de C.V. v. Argov,*
  2012 WL 3027456 (D. Nev. July 23, 2012) ...............................7, 8, 15, 16, 17, 18, 19, 20, 21

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page

*Ford Motor Co. v. Montana Eighth Jud. Dist. Court,*
    592 U.S. 351 (2021) .................................................................................................8, 9

*In re Funeral Consumers Antitrust Litig.,*
    2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) ......................................................13, 17, 22

*Go-Video, Inc. v. Akai Elec. Co.,*
    885 F.2d 1406 (9th Cir. 1989) .................................................................................11

*GTE New Media Servs. Inc. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) ...............................................................................11

*Healy v. Phillips,*
    1993 WL 414192 (9th Cir. Oct. 18, 1993)..................................................................10

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010) ...................................................................................................8

*Hoffman v. Blaski,*
    363 U.S. 335 (1960) ...................................................................................................7

*Inherent.com v. Martindale-Hubbell,*
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................................7

*Italian Colors Rest. v. Am. Express Co.,*
    2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .............................................................22

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) ................................................12, 15, 17, 18, 19, 20, 21, 22

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.,*
    725 F.3d 718 (7th Cir. 2013) ...................................................................................11

*Lens.com, Inc. v. 1-800 CONTACTS, Inc.,*
    2012 WL 1155470 (D. Nev. Apr. 4, 2012)..........................................................18, 20, 22

*Leon v. Boeing Co.,*
    664 F. App'x 613 (9th Cir. 2016) ...............................................................................15

*Lindora, LLC v. Isagenix Int'l, LLC,*
    198 F. Supp. 3d 1127 (S.D. Cal. 2016)..........................................................................9

*Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) .............................................................................16, 18, 21

*MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.,*
    2018 WL 5086623 (C.D. Cal. Aug. 13, 2018).................................................................9

*NXP B.V. v. Broadcom Corp.,*
    2014 WL 12703746 (D. Nev. Feb. 20, 2014) .........................................................14, 16, 20

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ...............................................................12, 13, 15, 21

*Prince v. Oregon Mut. Ins. Co.*,
  2017 WL 1173918 (D. Nev. Mar. 28, 2017) ......................................................11

*Ravin Crossbows, LLC v. Hunter's Mfg. Co.*,
  2023 WL 2572288 (D. Nev. Mar. 17, 2023) ......................7, 12, 17, 19, 20, 21

*Sapan v. Dynamic Network Factory, Inc.*,
  2013 WL 12094829 (S.D. Cal. Nov. 25, 2013) ...................................................10

*Secured Mail Sols., LLC v. Adv. Image Direct, LLC*,
  2013 WL 8596579 (C.D. Cal. Jan. 30, 2013) .....................................................20

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988).................................................................................................7

*Stone v. Sterling Infosystems, Inc.*,
  2016 WL 11759443 (C.D. Cal. July 1, 2016) ....................................................13

*Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*,
  2021 WL 3847802 (D. Nev. Aug. 27, 2021) ........................................17, 20, 21

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)...............................................................................................7

*Ventress v. Japan Airlines*,
  486 F.3d 1111 (9th Cir. 2007) ...............................................................13, 18, 19

*Walden v. Fiore*,
  571 U.S. 277 (2014)...............................................................................................8

*Zut v. Harrah's Ent.*,
  2013 WL 5442282 (N.D. Cal. Sept. 30, 2013) .......................................12, 13, 16

**Statutes**

28 U.S.C. § 1391.................................................................................................9, 10

28 U.S.C. § 1404...................................................................................................6, 7

**Other Authorities**

*Energy*, GREATER HOUSTON PARTNERSHIP, https://tinyurl.com/ms9b22kx (last
  visited March 22, 2024) ......................................................................................22

**Rules**

Fed. R. Civ. P. 45.....................................................................................................18

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Seventeen Plaintiffs filed a total of nine putative class actions in this Court, alleging that eight Defendants conspired to constrain the production of shale oil in order to increase the price of oil products.  These claims are false.  They also have no connection to Nevada and should not have been filed in this District.  None of the events Plaintiffs allege gave rise to the purported conspiracy occurred in Nevada.  No Defendant produces or sells shale oil in Nevada.  And no Defendant has an office or any employees who work in Nevada—so no Defendant's witnesses or documents are in Nevada.  The *only* connection these cases have to this District is that two of the 17 named Plaintiffs (who filed two of the nine complaints) allege they purchased oil products in Nevada.  For seven of the complaints, there is not even a thin reed of a connection to Nevada.

These cases should be transferred to Texas—and, specifically, to the Midland/Odessa Division of the Western District of Texas.  The relevant events alleged in the complaints occurred in Texas.  Most Defendants are headquartered in Texas.  And Midland, Texas, which is centrally located in the shale-rich Permian Basin in the Western District of Texas, lies at the heart of the shale oil industry that is the subject of the complaints.  Moreover, much of the shale oil that Defendants produce comes from, and is sold in, the Permian Basin in and around Midland.  Two Defendants also have their headquarters in Midland, and several Defendants have extensive shale oil operations there.  Another Defendant, Chesapeake, produced shale oil in Texas during the purported class period before divesting nearly all its shale oil assets as of February 2023.  Given these significant contacts with Texas, and in particular the Permian Basin, many of the potential witnesses and much of the documentary evidence resides in or near the Western District of Texas.  By contrast, *none* of the Defendants' potential witnesses or documents are in Nevada.

In view of the cases' lack of connection to Nevada and strong ties to the Permian Basin region, this Court should, under the applicable standards, transfer the cases to the Midland/Odessa Division of the Western District of Texas.  The requirements for transfer under 28 U.S.C. § 1404(a) are easily met here.  Plaintiffs could have brought these actions in the Midland/Odessa Division of the Western District of Texas, where several Defendants conduct business and in which many

1   of the relevant events are alleged to have occurred.  And the interests of justice and the convenience

2   of the parties strongly favor transfer to that Division.  Plaintiffs bring claims in part on behalf of

3   putative nationwide classes, which means their choice of venue is entitled to minimal, if any,

4   weight here; many of the alleged events in the complaints occurred in or near the Midland/Odessa

5   Division, whereas none occurred in Nevada; and many witnesses and documents are likely in or

6   near the Midland/Odessa Division, whereas none (outside of two named Plaintiffs) are likely to be

7   located in Nevada.  Under these circumstances, this Court should exercise its discretion to transfer

8   these cases to the Midland/Odessa Division of the Western District of Texas.

9           In the alternative, if the Court does not deem the Midland/Odessa Division of the Western

10  District of Texas an appropriate forum, the Court should transfer the cases to the Northern District

11  of Texas or the Southern District of Texas.  Certain Defendants have offices in the Northern

12  District of Texas, and it is centrally located to Defendants that are headquartered in Midland,

13  Irving, Houston, and Oklahoma City.  Likewise, two Defendants are headquartered in the Southern

14  District of Texas and it, too, is conveniently located to Defendants.

15                              **II.      BACKGROUND**

16          Seventeen Plaintiffs from across the country—hailing from Hawaii to Maine—filed nine

17  complaints before this Court.  Through nearly identical allegations, the complaints claim that

18  Defendants, current and former independent producers of shale oil (or "high-quality crude oil

19  found between layers of shale rock"), agreed with each other to raise oil prices by restricting

20  domestic shale oil production in violation of Section 1 of the Sherman Act and the laws of 28 states

21  and the District of Columbia.  *Rosenbaum* Compl. ¶¶ 1–16, 133–207.[2]  According to Plaintiffs,

22  this purported conspiracy increased the price of certain products, such as gasoline, derived from

23  crude oil.  *Id.* ¶ 119.  Plaintiffs seek certification of numerous classes, as well as nationwide

24  injunctive relief on their federal antitrust claim and an array of damages on their state-law claims.[3]

25  _____

26  [2] Because the substantive allegations are the same across the complaints, Defendants cite the
    *Rosenbaum* complaint in this motion unless otherwise indicated.  For the Court's convenience,
27  Defendants have provided a table, attached hereto as Exhibit A, that cross-references the cited
    *Rosenbaum* paragraph numbers to the other eight complaints.

28  [3] The *Rosenbaum* Plaintiffs bring claims on behalf of putative classes of retail purchasers of
    gasoline from a gas station for personal use; the *Andrew Caplen Installations, LLC*, *These Paws*

Each complaint begins with allegations about shale oil production in Texas.  According to Plaintiffs, the first commercial shale operation began in Texas in 2002.  *Rosenbaum* Compl. ¶ 45. Plaintiffs allege that the commercial shale industry grew considerably from 2008 through 2015, a period dubbed the "Shale Revolution," when shale oil production led to the fastest increase in crude oil production in U.S. history.  *Id.*  Much of that production took place, and continues to take place, in Texas.  *Id.* ¶ 52 n.23.  Two of the top three shale oil "plays"—geographic areas where shale formations contain significant amounts of oil—are in Texas.  *Id.*  This includes the Permian Basin, which is located largely in the Western District of Texas and was the site of 40% of all U.S. crude oil production in 2022.  *Id.*; Ex. B ¶ 9; Ex. C ¶ 5; Ex. D ¶ 6; Ex. E ¶ 8.  It also includes Eagle Ford, much of which is also in the Western District.  *Rosenbaum* Compl. ¶ 52 n.23; Ex. E ¶ 9.

Aside from alleging facts about two events occurring overseas, Plaintiffs' allegations center around meetings that purportedly occurred, largely at annual industry conferences, in Texas between 2017 and 2019 (*Rosenbaum* Compl. ¶¶ 59, 63–64, 75–76) and then in 2022 and 2023.  *Id.* ¶ 91.  Plaintiffs do not allege that any of the events giving rise to the purported agreement occurred in Nevada.  Nor do Plaintiffs allege that Defendants took any actions to carry out the purported agreement in Nevada.

The shale oil industry in the United States remains centered in Texas.  Plaintiffs admit that five Defendants, all of whom are shale oil producers, are headquartered in Texas.  *Rosenbaum* Compl. ¶¶ 20, 23, 24, 26, 27.  Seven Defendants currently produce and sell shale oil, or otherwise have shale oil operations, in Texas.  Ex. B ¶ 9; Ex. C ¶ 5; Ex. D ¶ 5; Ex. E ¶ 7; Ex. F ¶¶ 4, 6; Ex. H ¶¶ 6–7; Ex. I ¶ 3.  And five of those seven produce the majority, if not all, of their domestic shale oil in the Permian Basin, which is largely located in the Western District of Texas.  Ex. B

---

*Were Made For Walkin' LLC*, and *Western Cab Co.* Plaintiffs bring claims on behalf of putative classes of retail purchasers of gasoline and diesel fuel from a gas station or truck stop for commercial use; the *Courtmanche*, *Santillo*, and *Beaumont* Plaintiffs bring claims on behalf of putative classes of purchasers of residential heating oil; the *MacDowell* Plaintiffs bring claims on behalf of putative classes of purchasers of heating oil; and the sole Plaintiff in *Mellor* brings claims on behalf of putative classes of purchasers of commercial marine fuel for commercial use in marine vessels.  To date, *Rosenbaum*, *Andrew Caplen Installations, LLC*, and *These Paws Were Made For Walkin' LLC* have been consolidated, and *Courtmanche*, *Santillo*, *Beaumont*, and *MacDowell* have been consolidated.

Gibson, Dunn & Crutcher LLP

¶ 9; Ex. C ¶ 5; Ex. D ¶¶ 6–7; Ex. E ¶¶ 8, 11; Ex. F ¶ 6.  The one remaining Defendant, Chesapeake, has sold the overwhelming majority of its shale oil business as of February 2023, but before divesting its shale oil assets, produced shale oil in Texas.  Ex. G ¶¶ 4–5.  In particular:

- *Permian* is headquartered in Midland, Texas, in the Midland/Odessa Division of the Western District of Texas, where approximately 37% of its employees work.  Ex. B ¶¶ 3–4.  All—or 100%—of Permian's shale oil production occurs in the Permian Basin (*id.* ¶ 9), and 12 of Permian's 14 total officers work in Midland.  *Id.* ¶ 4.  Moreover, approximately 18% of its employees work in San Angelo, Texas, which is in the San Angelo Division of the Northern District of Texas (*id.* ¶ 6), and approximately 11% work in The Woodlands, Texas, which is in the Southern District of Texas.  *Id.* ¶ 7.

- *Diamondback* also is headquartered in Midland (Ex. C ¶ 3), and approximately 70% of its employees work in the Western District of Texas.  *Id.* ¶ 4.  Through Diamondback's operating company and wholly owned subsidiary, Diamondback E&P LLC, 100% of Diamondback's shale oil production occurs in the Permian Basin (*id.* ¶ 5), and 20 of Diamondback's 23 corporate officers work in Midland.  *Id.* ¶ 4.

- *Pioneer* is headquartered in the Las Colinas community of Irving, Texas, in the Dallas Division of the Northern District of Texas.  Ex. D ¶ 2.  Approximately 42% of Pioneer's employees work in Las Colinas; approximately 48% of employees work in Midland County; and approximately 10% work in Big Lake, Texas, which is in the San Angelo Division of the Northern District of Texas and which is virtually equidistant from Midland and San Angelo.  *Id.* ¶¶ 3–4.  Approximately 88% of employees involved in Pioneer's oil production operations work in Midland County, while the remaining production employees work in counties within the Northern District of Texas.  *Id.* ¶ 8.  All 20 employees responsible for production accounting work in Midland (*id.* ¶ 9), more than 80% of Pioneer's company-wide oil production in Q4 2023 occurred in the Midland/Odessa Division of the Western District of Texas, and nearly all of Pioneer's remaining oil production during that period occurred in three counties that, while in the Northern District of Texas, are immediately adjacent to counties in the Midland/Odessa Division of the

Gibson, Dunn & Crutcher LLP

Western District of Texas.  *Id.* ¶ 7.  Moreover, all 29 of Pioneer's officers work in Texas, with 27 working in Los Colinas and two working in downtown Midland.  *Id.* ¶ 10.

- ***EOG*** is headquartered in Houston (Ex. E ¶ 3), where approximately 36% of its employees work.  *Id.* ¶ 6.  Approximately 36% of EOG's employees work within the Western District of Texas (*id.* ¶ 11), 6% of employees work in the Northern District of Texas (*id.* ¶ 12), and 40% work in the Southern District of Texas.  *Id.* ¶ 13.  Almost all of EOG's Texas oil production occurs within the Western District of Texas.  *Id.* ¶ 11.

- ***Occidental*** is headquartered in Houston (Ex. F ¶ 3), where approximately 25% of its domestic workforce (including officers, employees and contractors) is based.  *Id.* ¶ 5.  Approximately 23% of Occidental's domestic workforce works in and around the Permian Basin, including in Midland, Texas.  *Id.*  Occidental also maintains a large office in Dallas, which is in the Dallas Division of the Northern District of Texas.  *Id.*  More than 58% of its oil production occurs in the Permian Basin, largely located in the Western District of Texas.  *Id.* ¶ 6.

- ***Chesapeake*** is headquartered in Oklahoma City, Oklahoma (Ex. G ¶ 3), which is slightly more than six hours away from Midland, Texas, and slightly more than three hours away from Dallas-Fort Worth, by car.  Chesapeake has sold the overwhelming majority of its shale oil business in primarily four separate transactions: (1) its Wyoming Powder River Basin shale oil assets to Continental Resources effective October 1, 2021, (2) a portion of its South Texas shale oil assets to WildFire Energy LLC effective October 1, 2022, (3) a portion of its South Texas shale oil assets to INEOS Energy effective October 1, 2022, and (4) its remaining shale oil assets, located in the Eagle Ford trend of South Texas, to SilverBow Resources, Inc., effective February 1, 2023.  *Id.* ¶¶ 6–10.

- ***Continental*** is headquartered in Oklahoma City.  Ex. H ¶ 2.  Continental maintains offices in Odessa Texas, and Monahans, Texas, which are both within the Western District of Texas and approximately 26 and 57 miles from Midland, respectively.  *Id.* ¶ 3.  Approximately 17.2% of Continental's non-Oklahoma workforce is employed in Texas, and Continental conducts a substantial portion of its oil activities in Texas—including

Gibson, Dunn &
Crutcher LLP

through production facilities that it operates in Midland, Ector, Pecos, Reeves, Ward, and Winkler counties (all of which are within the Western District of Texas). *Id.* ¶¶ 4, 6, 9. Moreover, Continental produces and sells a substantial amount of oil in the Permian Basin, with more than 17% of Continental's total oil production and sales in 2023 occurring in that region. *Id.* ¶ 7.

- ***Hess*** is headquartered in New York City (Ex. I ¶ 2), which is slightly more than six hours away from Midland, and slightly more than four hours from Dallas-Fort Worth, by plane. Hess maintains its largest office and its exploration and production headquarters in Houston, where the company's production decisions are made. *Id.* ¶¶ 2–3. Hess employees and officers regularly travel to Texas to conduct business on Hess's behalf. *Id.* ¶ 4.

While Defendants have significant contacts with Texas and the Permian Basin region, they have no relevant contacts with Nevada:  no offices, shale oil sales, or employees who work there. No Defendant maintains any production or other operations in Nevada.  Ex. B ¶ 10; Ex. C ¶¶ 6–7; Ex. D ¶ 13; Ex. E ¶ 4; Ex. F ¶ 7; Ex. G ¶ 12; Ex. H ¶ 10; Ex. I ¶ 5.

The 17 Plaintiffs also lack any meaningful connection to Nevada.  Aside from *two* Plaintiffs who allegedly purchased gasoline—only one of the four relevant products—in Nevada (*Rosenbaum* Compl. ¶ 17; *Western Cab* Compl. ¶ 24), *none* of the other 15 Plaintiffs have alleged any connections to Nevada at all.  Rather, they hail from cities far away from Nevada and do not allege that they have even set foot, much less purchased oil products, in Nevada.  *See Andrew Caplen* Compl. ¶¶ 24–25 (from Pennsylvania and New York, and purchased gas in Michigan, North Carolina, and New York); *These Paws* Compl. ¶ 28 (Minnesota); *Courtmanche* Compl. ¶¶ 18–22 (Connecticut, New York, Rhode Island, Connecticut, and New Hampshire); *Mellor* Compl. ¶ 16 (California); *Santillo* Compl. ¶ 18 (Maine); *Beaumont* Compl. ¶ 22 (Connecticut); *MacDowell* Compl. ¶ 25 (Connecticut).

### III.    LEGAL STANDARD

A district court may "transfer any civil action to any other district or division where it might have been brought" based on the "interest[s] of justice" and "the convenience of parties and witnesses." 28 U.S.C. § 1404(a).  Courts may transfer cases to another district to "protect litigants,

Gibson, Dunn & Crutcher LLP

witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To support a transfer motion under § 1404(a), the moving party must show (1) the district to which transfer is sought is one "where [the action] might have been brought," and (2) transfer would serve "the convenience of parties and witnesses, [and is] in the interest of justice." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see Dooley v. Nev. Gold Mines, LLC*, 2022 WL 867265, at *1 (D. Nev. Mar. 23, 2022). Where, as here, these two requirements are met, a court may transfer the case to a particular division within an appropriate district. *E.g.*, *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, 2023 WL 2572288, at *6 (D. Nev. Mar. 17, 2023) (transferring to the Eastern Division of the Northern District of Ohio); 28 U.S.C. § 1404(a) (permitting transfer "to any other … division").

## IV.   ARGUMENT

This Court should transfer the nine actions to the Midland/Odessa Division of the Western District of Texas because "[Nevada] has no relation to the parties or to the dispute." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006). Each action could have been brought in the Western District of Texas, and the interests of justice and convenience of the parties overwhelmingly favor transfer to that forum. Alternatively, the Court should transfer these cases to the Northern District of Texas, which is centrally located to nearly all Defendants, or to the Southern District of Texas, in which two Defendants are headquartered. Each of these Texas forums is far more appropriate and convenient for these cases than the District of Nevada, which has no meaningful connection to this dispute at all.

### A.   Plaintiffs Could Have Sued Defendants In The Western District Of Texas

Although Defendants maintain that Plaintiffs' complaints fail to state a claim and should ultimately be dismissed with prejudice, each of these actions could have originally been brought in the Western District of Texas. "A district is one where a suit might have been brought if 'when a suit is commenced, [the] plaintiff has a right to sue in that district, independently of the wishes of [the] defendant.'" *Editorial Planeta Mexicana, S.A. de C.V. v. Argov*, 2012 WL 3027456, at *2 (D. Nev. July 23, 2012) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). "Under this standard, transfer is appropriate when venue is proper and personal jurisdiction exists over the

Gibson, Dunn & Crutcher LLP

defendant in the transferee jurisdiction." *Id.*  Both requirements are met here.

### 1.      Personal Jurisdiction Is Proper In Texas

There are "two kinds of personal jurisdiction:  general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S. 351, 358 (2021).

A corporate defendant is subject to general personal jurisdiction in its state of "incorporation and principal place of business." *Ford*, 592 U.S. at 359; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  A corporation's "principal place of business" is typically "the place where [it] maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  Here, five Defendants (Permian, Diamondback, Pioneer, EOG, and Occidental) are headquartered in Texas and subject to general personal jurisdiction there. Ex. B ¶ 3; Ex. C ¶ 3; Ex. D ¶ 2; Ex. E ¶ 3; Ex. F ¶ 3.

The other three Defendants (Chesapeake, Continental, and Hess) are subject to specific personal jurisdiction in Texas given their case-specific contacts with the state.  Specific jurisdiction is proper over a defendant where it "purposefully direct[s]" its activities toward the forum or "purposefully avail[s]" itself of forum benefits, and the plaintiff's claims "arise[] out of or relate[] to the defendant's forum-related activities." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023).  This test "focuses on the relationship among the defendant, the forum, and the litigation," and requires a "substantial connection" between the "defendant's suit-related conduct" and "the forum." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).  These requirements are satisfied here.

*First*, Chesapeake, Continental, and Hess have purposefully directed their activities toward and purposefully availed themselves of the benefits of Texas.  Before selling its shale oil business, Chesapeake conducted oil production operations in Texas during the period at issue in this lawsuit. Ex. G ¶¶ 4–5. Continental produces and sells a substantial amount of oil in Texas. Ex. H ¶ 6. And Hess has its exploration and production headquarters in Texas, where the company's production decisions are made. Ex. I ¶ 3.  Moreover, Plaintiffs contend that each Defendant attended annual trade shows, dinners, and meetings in Houston, Texas from 2017 to 2023. *See Rosenbaum* Compl. ¶¶ 29, 59, 63–64, 75–76, 91.

Gibson, Dunn &
Crutcher LLP

*Second*, Plaintiffs' claims arise out of or relate to Defendants' contacts with Texas. Plaintiffs allege Defendants "conspir[ed] to coordinate, and ultimately constrain, domestic shale oil production, which has had the effect of fixing, raising, and maintaining the price" of crude oil. *Rosenbaum* Compl. ¶ 1.  As stated above, Chesapeake, Continental, and Hess (as well as all other Defendants) conducted production-related activities in Texas during the period at issue in this case. *Supra* at pp. 3–6.  And Plaintiffs' theory relies on Defendants' attendance at annual trade shows, dinners, and meetings in Texas.  *Rosenbaum* Compl. ¶¶ 29, 59, 63–64, 75–76, 91.  Thus, Plaintiffs' claims arise out of or relate to Defendants' contacts with Texas.  *See Ford*, 592 U.S. at 362–63.

## 2.  Venue Is Proper In The Western District Of Texas

The general venue statute provides that "[a] civil action may be brought in … (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)–(2).  Both avenues are satisfied here.

*First*, venue is proper in the Western District of Texas under § 1391(b)(1) because two Defendants "reside[]" in that District and all other Defendants "reside[]" within Texas for purposes of venue.  28 U.S.C. § 1391(b)(1).  According to the statute, a corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id.* § 1391(c)(2).  Where a state has more than one judicial district, a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."  *Id.* § 1391(d).  Here, because two Defendants (Permian and Diamondback) are headquartered in and thus reside in the Western District, and all other Defendants are subject to personal jurisdiction in Texas, these requirements are easily satisfied.  *See, e.g., MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, 2018 WL 5086623, at *9 (C.D. Cal. Aug. 13, 2018) (venue proper in the Central District of California over group of defendants, where at least one defendant was subject to personal jurisdiction in, and thus a resident of, the district and the remaining defendants in the group were subject to personal jurisdiction in California); *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1146–47 & n.4 (S.D. Cal. 2016) (venue proper

Gibson, Dunn & Crutcher LLP

1    in the Southern District of California where one defendant resided in the district and other

2    defendant was subject to personal jurisdiction in California).[4]

3            *Second*, venue is also proper in the Western District of Texas under § 1391(b)(2) because

4    a "substantial part of the [alleged] events" giving rise to this case occurred there.  28 U.S.C.

5    § 1391(b)(2).  This provision "does not require that a majority of the [alleged] events" occurred in

6    the district, or even "that the events in that district predominate."  *Cont'l Auto. Sys., Inc. v. Avanci,*

7    *LLC*, 2019 WL 6735604, at *9 (N.D. Cal. Dec. 11, 2019) (Koh, J.).  "Rather, it is sufficient that a

8    substantial part of the events occurred in the [particular] venue, even if a greater part of the events

9    occurred elsewhere."  *Id.*; *see also Sapan v. Dynamic Network Factory, Inc.*, 2013 WL 12094829,

10   at *3 (S.D. Cal. Nov. 25, 2013) (same).  That test is satisfied here because Plaintiffs allege that

11   Defendants conspired to constrain shale oil production, and a substantial portion of that production

12   occurs in the Western District of Texas.  *Rosenbaum* Compl. ¶ 52 n.23; *e.g.*, *Healy v. Phillips*,

13   1993 WL 414192, at *2 (9th Cir. Oct. 18, 1993) (district court did not abuse its discretion in

14   transferring case from the District of Nevada to the Central District of California where "[t]he acts

15   supporting [the plaintiff's] claims are alleged to have taken place in Los Angeles").  Indeed, several

16   Defendants produce the majority, if not all, of their oil in the Permian Basin, which is located

17   largely in the Western District.  For example, Permian, Diamondback, and Pioneer produce all

18   their shale oil in the Permian Basin (Ex. B ¶ 9; Ex. C ¶ 5; Ex. D ¶¶ 6–7), and EOG, Occidental,

19   and Continental maintain substantial production operations in the Western District as well.  Ex. E

20   ¶¶ 8, 11; Ex. F ¶¶ 5–6; Ex. H ¶ 7.  These case-related activities are much greater than those in

21   *Continental Automotive*, where the court found that a substantial part of the events giving rise to

22   the claims occurred in the Northern District of Texas, even though only one of 12 defendants

23   conducted case-related activities in that district.  *See* 2019 WL 6735604, at *10.  This Court should

24   similarly conclude that Defendants' case-related activities with the Western District satisfy the

25

26   ──────────────────
     [4]   The Western District is the most appropriate transferee venue, as explained throughout this
27   motion.  But if the Court is inclined to choose a different Texas district, the Court should transfer
     to the Northern District or to the Southern District.  Venue would be proper in both districts, since
28   Pioneer is headquartered in Irving, Texas, which is in the Northern District; EOG and Occidental
     are headquartered in Houston, Texas, which is in the Southern District; and all other defendants
     reside in Texas for venue purposes, as discussed above.

Gibson, Dunn &
Crutcher LLP

venue requirements of § 1391(b)(2).

**3.    The Ninth Circuit's Interpretation Of The Clayton Act Also Supports Transfer To The Western District Of Texas**

Although not necessary to the resolution of this motion—given that this case could have been brought in the Western District of Texas under the traditional personal jurisdiction and venue inquiries—in the alternative, the case could have been brought in the Western District based on the Ninth Circuit's interpretation of the Clayton Act.[5]

According to the Ninth Circuit, Section 12 of the Clayton Act allows a corporate defendant to be sued in *any* judicial district, so long as the defendant has "minimum contacts with the United States" as a whole—a requirement that would be satisfied for all Defendants here.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (quoting *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989)); *see also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999) (citing *Go-Video* for the proposition that "[w]hen jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole"); *Rosenbaum* Compl. ¶ 37 (citing *Go-Video*).[6]  And where jurisdiction over a federal antitrust claim is grounded in a defendant's "national contacts," courts may exercise "pendent personal jurisdiction" over related state-law claims (*Action Embroidery*, 368 F.3d at 1180–81) if, as here, the federal and state claims "arise[] out of a common

---

[5]  Courts in this Circuit apply Ninth Circuit law to determine whether an action could have been brought in the transferee district. *E.g.*, *Cont'l Auto.*, 2019 WL 6735604, at *6–9; *Avery Dennison Corp. v. 3M Co.*, 2011 WL 13116731, at *3 (C.D. Cal. Feb. 2, 2011).

[6]  Defendants maintain that because they have no relevant contacts with Nevada, this Court may not exercise personal jurisdiction over Defendants, and expressly preserve the argument that the "national contacts" interpretation of the Clayton Act by the Ninth Circuit in *Go-Video* and *Action Embroidery* is incorrect, as illustrated by multiple circuit courts' rejection of the Ninth Circuit's rule that the Clayton Act confers personal jurisdiction over a corporate defendant, in any venue, so long as the defendant has minimum contacts with the United States as a whole. *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  Nonetheless, this Court may still decide Defendants' motion to transfer given this objection, as a transfer under § 1404(a) is proper regardless of the existence of personal jurisdiction over the defendant. *See, e.g.*, *Prince v. Oregon Mut. Ins. Co.*, 2017 WL 1173918, at *3 n.1 (D. Nev. Mar. 28, 2017) ("The court can transfer under § 1404(a) regardless of whether it has personal jurisdiction over the defendant.").

Gibson, Dunn & Crutcher LLP

nucleus of operative facts." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004).

**B.     The Interests Of Justice And Convenience Favor Transfer**

The interests of justice and convenience of the parties and witnesses overwhelmingly favor transfer to the Western District of Texas or, in the alternative, to the Northern District or Southern District of Texas.  The Ninth Circuit has identified eight factors that courts should consider in deciding whether to transfer a case to another district.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (listing factors).  Here, those factors weigh decidedly in favor of transfer because:  (1) the parties have far greater contacts with Texas than Nevada; (2) Plaintiffs allege that the conduct giving rise to their claims occurred in Texas, not Nevada; (3) litigating this case in the Western District (or the Northern or Southern Districts) of Texas will be far more convenient for potential witnesses than litigating in this forum; (4) the Western District (and the Northern and Southern Districts) of Texas will have a far greater ability to compel witnesses to testify than this Court; (5) Texas offers greater access to sources of proof; (6) the majority of potentially relevant production and sales of shale oil occurred in Texas; (7) Plaintiffs' choice of forum is entitled to little weight here; and (8) federal courts in Texas are just as capable of adjudicating Plaintiffs' antitrust claims and, if anything, are likely more familiar with the oil and gas industry.  *See id.*; *e.g.*, *Ravin Crossbows*, 2023 WL 2572288, at *2–3 (applying same factors).

**1.     The Parties' Contacts With The Western District Of Texas Are Much More Extensive Than Their Contacts With This Forum**

The first factor—"the respective parties' contacts with the forum"—weighs heavily in favor of transferring this case to the Western District of Texas.  *Jones*, 211 F.3d at 498.  Relevant considerations under this factor include where the parties reside or are incorporated, where the parties conduct business and work, where the parties have offices and employees, where the parties own property, and the extent to which the parties travel to either forum.  *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 955 (9th Cir. 1968); *Zut v. Harrah's Ent.*, 2013 WL 5442282, at *2 (N.D. Cal. Sept. 30, 2013).  The focus of this inquiry is where the parties have the greatest "connection" (*Discover Growth Fund, LLC v. Clickstream Corp.*, 2023 WL 4363650, at *3 (D.

Gibson, Dunn & Crutcher LLP

1   Nev. July 6, 2023)), and transfer is proper where there is "no significant connection between [the

2   plaintiff's chosen forum] and the facts alleged in the complaint." *Ventress v. Japan Airlines*, 486

3   F.3d 1111, 1118 (9th Cir. 2007).

4         In *Pacific Car & Foundry*, for example, this factor favored transfer when the defendant

5   "maintain[ed] no office" in the forum, made only five total trips to the forum in 18 months, and

6   "[n]o employee or agent [was] stationed there." 403 F.2d at 955.  In *Zut*, this factor also favored

7   transfer because neither of the defendants conducted business, maintained employees, had offices,

8   or owned property in the forum state, much less in the transferor district.  2013 WL 5442282, at

9   *2.  And in *In re Funeral Consumers Antitrust Litig.*, the court transferred plaintiffs' antitrust

10  actions from the Northern District of California to the Southern District of Texas where "[o]nly

11  one of the dozen or so plaintiffs even reside[d] in California," and "[a]ll of defendants' principal

12  places of businesses [were] in Houston or points east."  2005 WL 2334362, at *2–3 (N.D. Cal.

13  Sept. 23, 2005).

14        *Continental Automotive* is also illustrative.  There, Judge Koh granted a motion to transfer

15  from the Northern District of California to the Northern District of Texas, despite the defendants

16  having fewer meaningful contacts with Texas, and more contacts with the original forum, than

17  defendants do here.  2019 WL 6735604, at *11–12.  There, the plaintiff filed an antitrust case in

18  California against 12 defendants.  *Id.*  Four defendants were headquartered in Texas, one defendant

19  was headquartered in Texas before dissolving, one had operations in Texas and California, and six

20  were foreign.  *Id.*  Although only half the defendants had any connection to Texas, and half were

21  "equally inconvenienced by California and Texas forums," the court still found that "the Northern

22  District of Texas [is] more convenient" and that this factor "weigh[ed] in favor of transfer."  *Id.*

23        As in these cases, the parties have almost no contacts with Plaintiffs' chosen forum (the

24  District of Nevada) but have substantial contacts with Texas.  For starters, nearly all parties here

25  lack any relevant connection to the District of Nevada.  Only *two* of the 17 named Plaintiffs—who

26  purportedly purchased only one of four end-products—allegedly reside in Nevada, and those

27  Plaintiffs' residence is entitled to negligible weight "since [the] [p]laintiff[s] [are] bringing … class

28  action[s]" (*Stone v. Sterling Infosystems, Inc.*, 2016 WL 11759443, at *6 (C.D. Cal. July 1, 2016)),

Gibson, Dunn &
Crutcher LLP

and this "forum lacks a significant connection to the activities alleged in the complaint." *Cont'l Auto.*, 2019 WL 6735604, at *11.  None of the remaining Plaintiffs alleges any connection to Nevada.  Nor are Defendants alleged to have any connection to Nevada.  Outside of Plaintiffs' conclusory allegations that each Defendant has "committed overt acts in furtherance of the conspiracy" in the District of Nevada (*Rosenbaum* Compl. ¶ 28), "there is no evidence that any of the … defendants have Nevada contacts" at all.  *Conner v. Kelly*, 2023 WL 2842147, at *3 (D. Nev. Apr. 6, 2023).  And, as a matter of fact, no Defendant sells shale oil in Nevada, is incorporated or headquartered in Nevada, conducts production operations in Nevada, maintains an office or has employees who work in Nevada, or owns any property in Nevada.  Ex. B ¶ 10; Ex. C ¶¶ 6–7; Ex. D ¶ 13; Ex. E ¶ 4; Ex. F ¶ 7; Ex. G ¶ 12; Ex. H ¶ 10; Ex. I ¶ 5; *see NXP B.V. v. Broadcom Corp.*, 2014 WL 12703746, at *3 (D. Nev. Feb. 20, 2014) (granting transfer motion where "[n]either party is incorporated in Nevada; neither party claims to have any offices or employees in Nevada; and neither party maintains any documents in Nevada in the ordinary course of business").

By contrast, the parties have a significant connection to Texas generally and, more specifically, to the Western District of Texas.  Six Defendants maintain operations in the Western District (Ex. B ¶¶ 4–5, 9; Ex. C ¶¶ 4–5; Ex. D ¶¶ 3–4, 7–10; Ex. E ¶ 11; Ex. F ¶¶ 5–6; Ex. H ¶¶ 7–9), while four Defendants maintain operations in the Northern District (Ex. B ¶ 6; Ex. D ¶¶ 2–4, 7–8, 10; Ex. E ¶¶ 10, 12; Ex. F ¶ 5), and four in the Southern District.  Ex. B ¶ 7; Ex. E ¶¶ 3, 13; Ex. F ¶¶ 3, 5; Ex. I ¶¶ 2–3.  And much of the shale oil produced by most Defendants comes from those regions—and, in particular, from the Permian Basin located within the Western District of Texas, representing the largest area of that production.  Ex. B ¶ 9; Ex. C ¶ 5; Ex. D ¶¶ 6–7; Ex. E ¶¶ 8, 11; Ex. F ¶ 6; Ex. H ¶ 7.  Beyond that, many of Defendants' employees who reside outside of Texas frequently travel to Texas, the home of the shale oil industry in the United States, in furtherance of their business affairs.  Ex. F ¶ 5; Ex. H ¶ 5; Ex. I ¶ 4.

As to the Western District of Texas in particular, a significant portion of Defendants' respective employees who perform work related to the production and sale of shale oil work in the Midland area in the Western District of Texas.  Ex. B ¶¶ 4, 9; Ex. C ¶¶ 4–5; Ex. D ¶¶ 8–9; Ex. E ¶ 11; Ex. F ¶¶ 5–6; Ex. H ¶¶ 4, 7, 9.  As stated, six Defendants have oil operations in that District.

Gibson, Dunn & Crutcher LLP

Permian and Diamondback are headquartered there, where they maintain numerous employees and all their production operations. Ex. B ¶¶ 3–5, 9; Ex. C ¶¶ 3–5. Pioneer and EOG also maintain substantial production operations in the Western District, where a significant number of their employees work and the majority of their domestic production occurs. Ex. D ¶¶ 7–9; Ex. E. ¶¶ 8–9, 11. And Occidental and Continental each maintain operations in the Western District, where a substantial number of their respective domestic employees work. Ex. F ¶¶ 5–6; Ex. H ¶¶ 4, 7, 9. The remaining Defendants are either headquartered (Chesapeake) or maintain a regional headquarters (Hess) within driving distance to the Western District. Ex. G ¶ 3; Ex. I ¶ 2.

In the alternative, if for any reason the Court determines that the Midland/Odessa Division is not the appropriate forum, it should transfer the cases to the Northern District or the Southern District of Texas. As for the Northern District, several Defendants have operations there, with a number of their employees working there. Ex. B ¶ 6; Ex. D ¶ 4; Ex. E ¶ 12; Ex. F ¶ 5. For example, Pioneer is headquartered in the Northern District, where the majority of its employees and nearly all its officers work. Ex. D ¶¶ 2, 4, 10. Two Defendants also have shale oil operations in the Northern District. Ex. D ¶ 7; Ex. E ¶ 12. Given its central location within Texas, nearly all Defendants are headquartered or maintain a regional headquarters within driving distance of the Dallas-Fort Worth area. Ex. B ¶ 3; Ex. C ¶ 3; Ex. D ¶ 4; Ex. E ¶ 3; Ex. F ¶ 5; Ex. G ¶ 3; Ex. H ¶¶ 2–3; Ex. I ¶ 2. As for the Southern District, two Defendants (EOG and Occidental) are headquartered there, and most Defendants are within driving distance to it. Ex. E ¶ 3; Ex. F ¶ 3.

In light of the parties' significant connections to Texas, and lack of any meaningful connections with the District of Nevada, this factor weighs strongly in favor of transfer.

## 2.    Plaintiffs Allege The Conduct Giving Rise To Their Claims Occurred In Texas

"[T]he contacts relating to the plaintiff[s'] cause of action in the chosen forum" similarly point to the Western District of Texas (or, alternatively, the Northern District or Southern District of Texas). *Jones*, 211 F.3d at 498. In assessing this factor, courts principally consider where "the operative facts" underlying a plaintiff's claims allegedly took place. *Pac. Car & Foundry*, 403 F.2d at 954; *e.g.*, *Leon v. Boeing Co.*, 664 F. App'x 613, 615 (9th Cir. 2016) (district court did not abuse discretion in transferring case to the District of Arizona where "the events giving rise to

[plaintiff's] claim occurred in Arizona"); *Editorial Planeta*, 2012 WL 3027456, at *6 (transferring case to the District of Massachusetts where "much of the conduct relating to the present cause of action … occurred in Massachusetts").  This factor favors transfer where, as here, the parties do not have contacts with the forum that "specifically relate to [plaintiffs'] cause[s] of action." *Zut*, 2013 WL 5442282, at *2.

In *Lou v. Belzberg*, for example, the Ninth Circuit affirmed the district court's transfer order where "the operative facts [did] not occur[] within the forum."  834 F.2d 730, 739 (9th Cir. 1987).  In *Broadcom*, the court similarly transferred the case from the District of Nevada to the Northern District of California where there was "no evidence that Nevada is a primary or major market for" defendant's products in comparison to other jurisdictions, and thus no "substantial connection" existed between plaintiff's allegations and the forum.  2014 WL 12703746, at *3.  And in *Continental Automotive*, the court, in transferring from the Northern District of California to the Northern District of Texas, reasoned that although the plaintiffs had pleaded a case that was "undoubtedly national—indeed, international—in scope," the Northern District of Texas had a more localized connection to the litigation because much of the conduct alleged in the complaint occurred in Dallas.  2019 WL 6735604, at *17–18.

Here, too, there is *no* connection, much less a substantial one, between Plaintiffs' claims and the District of Nevada, and most of the case-specific contacts lie in Texas—where many Defendants are headquartered, and all the domestic events supposedly giving rise to the alleged adoption of "nationwide [production] policies" occurred.  *Conner*, 2023 WL 2842147, at *3.  Plaintiffs claim that Defendants engaged in discussions regarding an alleged agreement to constrict shale oil production, and that "all [domestic] communications" occurred at annual trade shows, dinners, and meetings in Texas.  *Editorial Planeta*, 2012 WL 3027456, at *6; *Rosenbaum* Compl. ¶¶ 59, 63–64, 75–76, 91.  Plaintiffs do not allege that *any* of those discussions occurred in Nevada—or in any other state in the United States.

Likewise, Plaintiffs allege that Defendants restricted the output of shale oil, but much of the shale oil production for most Defendants occurred (and still occurs) in Texas—principally in the Western District of Texas.  Ex. B ¶ 9; Ex. C ¶ 5; Ex. D ¶¶ 5–7; Ex. E ¶ 11; Ex. F ¶ 6; Ex. H

Gibson, Dunn & Crutcher LLP

¶¶ 6–7.  The complaints do not allege that shale oil production—or decisions about that production—occurred in Nevada.  *See Absorption Pharms., LLC v. Reckitt Benckiser, LLC*, 2017 WL 5986122, at *6 (D. Nev. Dec. 1, 2017) (transferring case where "[m]ost all of defendant[s'] alleged conduct in th[e] case occurred outside of the state of Nevada").  Nor could they, as no Defendant has shale oil operations in Nevada, and no Defendant's officers who might make production-related decisions reside in Nevada or make those types of decisions from Nevada.  Ex. B ¶ 10; Ex. C ¶¶ 6–7; Ex. D ¶ 13; Ex. E ¶ 4; Ex. F ¶ 7; Ex. G ¶ 12; Ex. H ¶ 10; Ex. I ¶ 5.

This factor weighs strongly in favor of transfer.

### 3. The Western District Of Texas Is Less Expensive And Far More Convenient For Potential Witnesses Than The District Of Nevada

The next factor—"the differences in the costs of litigation in the [competing] forums"— also favors transfer.  *Jones*, 211 F.3d at 498–99.  This factor "weighs the differences in cost of litigation in the [competing] forums," as well as "the convenience of litigating in the transferee forum for potential witnesses."  *Ravin Crossbows*, 2023 WL 2572288, at *4; *see also Editorial Planeta*, 2012 WL 3027456, at *6.  "Convenience of witnesses is often the most important [consideration] in determining whether or not to transfer a given case."  *Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*, 2021 WL 3847802, at *6 (D. Nev. Aug. 27, 2021).  This factor favors transfer where "most potential witnesses reside within the [transferee District], or at least are closer to [that District]."  *Ravin Crossbows, LLC*, 2023 WL 2572288, at *4; *Absorption Pharms.*, 2017 WL 5986122, at *6.

"When a nationwide antitrust conspiracy is alleged, the key witnesses usually work (or worked) at a national office or a regional office rather than a local retail outlet.  Therefore, the final trial witnesses … are very likely to be drawn" from defendants' headquarters or cities in which they maintain significant operations.  *Funeral Consumers*, 2005 WL 2334362, at *5.  Requiring such witnesses to "take time out of their work and private time to travel to" a foreign district imposes real and significant burdens on those individuals, even if they are current or former employees of the defendants.  *Id.* at *4.

Here, Plaintiffs' own allegations indicate that litigation would be less expensive and more

convenient in the Western District of Texas (or, alternatively, the Northern District or Southern District of Texas) than in the District of Nevada, since many of the current and former employees who Plaintiffs seemingly believe could serve as witnesses reside in or near the Western, Northern, and/or Southern Districts.  *See*, *e.g.*, *Ventress*, 486 F.3d at 1119 (affirming transfer from the Central District of California to the District of Hawaii where "most potential witnesses resided in Hawaii and Japan").  But *none* of those individuals live in or near the District of Nevada, and no Defendant is alleged to have headquarters in Nevada or to conduct operations in Nevada.  Ex. B ¶ 10; Ex. C ¶¶ 6–7; Ex. D ¶ 13; Ex. E ¶ 4; Ex. F ¶ 7; Ex. G ¶¶ 12–13; Ex. H ¶ 10; Ex. I ¶ 5.

Nevada is equally inconvenient for nearly all Plaintiffs.  While only two of 17 Plaintiffs are domiciled in Nevada, *13* Plaintiffs live in states that are east of Texas—and thus transferring the case to the Western, Northern, or Southern District of Texas would, on balance, likely make it cheaper and easier for those Plaintiffs to appear and testify at trial.  This factor favors transfer.  *See Belzberg*, 834 F.2d at 739 (affirming transfer to New York where "the costs of litigation would be drastically reduced if the case were heard" there); *Lens.com, Inc. v. 1-800 CONTACTS, Inc.*, 2012 WL 1155470, at *5 (D. Nev. Apr. 4, 2012) ("this factor does weigh in favor of transfer since [defendant] has many of its witnesses and counsel in Utah while [plaintiff] has only identified one potential witness from Nevada").

### 4.  The Western District Of Texas Will Have A Greater Ability To Compel Third-Party Witnesses To Testify Than This Court

"[T]he availability of compulsory process to compel attendance of unwilling non-party witnesses" also favors transfer.  *Jones*, 211 F.3d at 499.  Under Rule 45, a subpoena may command a person to attend a "hearing[] or deposition only … within 100 miles of where the person resides, is employed or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  A subpoena may also command a person to attend a trial "within 100 miles of where the person resides, is employed or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person … would not incur substantial expense."  Fed. R. Civ. P. 45(c)(1)(A)–(B).  This factor favors transfer if "no known non-party witnesses exist" in the transferor district and non-party witnesses do exist in the transferee

district(s).  *Editorial Planeta*, 2012 WL 3027456, at *7; *cf. Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990) (affirming grant of motion to dismiss on the ground of forum non conveniens, reasoning that "[b]ecause [defendant] cannot compel these witnesses to appear before U.S. courts, [defendant's] defense and trial preparation could suffer some impediment if the U.S. courts were to retain control of this litigation").

The location of non-party witnesses favors transfer to the Western District of Texas or, in the alternative, to the Northern District or Southern District of Texas.  Plaintiffs' complaints do not suggest there are any non-party witnesses in the District of Nevada, so it is unlikely that any such witnesses are within the subpoena power of this court.  Meanwhile, Plaintiffs' complaints reference numerous party and non-party witnesses, including former employees, who are located in Texas, far outside the subpoena power of this Court.  *See*, *e.g.*, *Rosenbaum* Compl. ¶¶ 59, 64, 72, 83, 89, 91, 104, 106; Ex. B ¶ 4; Ex. C ¶ 4; Ex. D ¶¶ 10–12.  And Texas has many oil and gas companies whose employees may ultimately be relevant third-party witnesses in this case.  *See*, *e.g.*, *Rosenbaum* Compl. ¶¶ 20, 22–24, 26–27, 45, 52 n.23.  At bottom, the Western District of Texas (which has the most significant shale oil operations in Texas), the Northern District of Texas (which also has significant shale oil operations and which is driving distance for current and former employees of Defendants and employees of other shale oil producers that operate in the Permian Basin or elsewhere in Texas or that have significant offices in Texas), and the Southern District of Texas (which is home to two Defendants), "can likely compel" more relevant third-party witnesses to testify in this case than this District.  *Ravin Crossbows*, 2023 WL 2572288, at *5.  This factor also supports transfer.

### 5.   Texas Offers Greater Access To Sources Of Proof

"[T]he ease of access to sources of proof" factor also favors transfer.  *Jones*, 211 F.3d at 499.  This consideration weighs which forum has better access to documentary evidence and witnesses (*see Editorial Planeta*, 2012 WL 3027456, at *7), and particularly favors transfer where "the location of relevant evidence exists almost entirely outside plaintiff's chosen forum, and much of it exists in the movant's proposed forum."  *Absorption Pharms.*, 2017 WL 5986122, at *6; *see*, *e.g.*, *Ventress*, 486 F.3d at 1119 (affirming transfer to the District of Hawaii where "most potential

Gibson, Dunn &
Crutcher LLP

witnesses" and "most of the documentary evidence … are located in Hawaii").  "Even in the age of electronic document storage and the Internet, courts favor transfer to the district where relevant documents are physically located."  *Ravin Crossbows*, 2023 WL 2572288, at *5 (quoting *Secured Mail Sols., LLC v. Adv. Image Direct, LLC*, 2013 WL 8596579, at *4 (C.D. Cal. Jan. 30, 2013)).

The Western District, Northern District, and Southern District of Texas each have better access to documentary evidence and witnesses than the District of Nevada.  Five Defendants have headquarters in Texas, seven Defendants have operations in Texas, and most Defendants either produce and/or sell, or produced and/or sold, much of their shale oil in Texas.  Ex. B ¶¶ 3–9; Ex. C ¶¶ 3–5; Ex. D ¶¶ 2–9; Ex. E ¶¶ 3, 7; Ex. F ¶¶ 3, 5–6; Ex. H ¶¶ 6–7; Ex. I ¶ 3.  Thus, employees who may serve as witnesses reside in Texas, documents that may need to be reviewed and produced are in Texas, and production and sales data that may serve as evidence exist there too—primarily in the Western District of Texas given the volume of shale oil operations.  *E.g.*, Ex. B ¶ 4; Ex. C ¶ 4; Ex. D ¶ 9; Ex. E ¶ 11; Ex. H ¶¶ 7–9.  By contrast, none of the alleged communications or other relevant conduct is alleged to have occurred in Nevada.  And no Defendant is alleged to have headquarters in Nevada or to conduct relevant business operations in Nevada.  Because "[t]here are no documents, witnesses, or other evidence in Nevada" (*Broadcom*, 2014 WL 12703746, at *4), "and the primary location of the evidence" is Texas, this factor heavily favors transfer.  *Editorial Planeta*, 2012 WL 3027456, at *7; *see also Ravin Crossbows*, 2023 WL 2572288, at *5 (when "the bulk of the relevant evidence usually comes from the accused … the place where the defendant's documents are kept weighs in favor of transfer to that location").

**6.    Most Defendants Produce And Sell The Majority Of Their Shale Oil In Texas**

Courts typically find the next factor—"the location where the relevant agreements were negotiated and executed" (*Jones*, 211 F.3d at 498)—neutral where, as here, "[t]his is an antitrust lawsuit[,] not a breach of contract lawsuit."  *Lens.com*, 2012 WL 1155470, at *4.  Even so, this factor favors transfer here because most Defendants produce and sell much of their oil in Texas, as discussed throughout this motion.  Indeed, because many Defendants are "headquartered in [Texas]" and have their operations in Texas—including in the Western District, Northern District, and Southern District of Texas—"many [potentially] relevant agreements regarding" the

production, refinement, and sale of shale oil "likely originated in" Texas as well.  *See Tonkawa Tribe*, 2021 WL 3847802, at \*5.  All of Permian's and Diamondback's production occurs in the Permian Basin, which is largely located in the Western District.  Ex. B ¶ 9; Ex. C ¶ 5.  The majority of Pioneer's, EOG's, and Occidental's domestic oil production occurs in the Western District, too.  Ex. D ¶¶ 6–7; Ex. E ¶¶ 8, 11; Ex. F ¶ 6.  Permian, Pioneer, and Occidental also maintain significant operations in the Northern District of Texas.  Ex. B ¶ 6; Ex. D ¶¶ 4, 7, 10; Ex. F ¶ 5.  And two Defendants are headquartered in the Southern District of Texas.  Ex. E ¶ 3; Ex. F ¶ 3.  In contrast to this substantial activity, Plaintiffs do not allege that any relevant agreements were negotiated or executed in Nevada.  This factor weighs favor of transfer to Texas.

### 7.   Plaintiffs' Choice Of Forum Is Entitled No Weight

Plaintiffs' "choice of forum," while a relevant factor, is entitled to no weight here because 15 of 17 Plaintiffs do not reside in Nevada and each of the cases is a putative class action.  *Jones*, 211 F.3d at 498.  A plaintiff's "choice of forum supported only by the fact that it was chosen" cannot overcome a "showing of inconvenience."  *Pac. Car & Foundry*, 403 F.2d at 955.  And courts do not defer to a plaintiff's choice of venue "when the plaintiff's choice is not its residence."  *Editorial Planeta*, 2012 WL 3027456, at \*5; *see also Ravin Crossbows*, 2023 WL 2572288, at \*3 ("A plaintiff's choice of forum is entitled to less deference … when the plaintiff elects to pursue a case outside its home forum.").  Nor is a plaintiff's choice of venue entitled to any weight where "the forum lacks a significant connection to the activities alleged in the complaint" (*Editorial Planeta*, 2012 WL 3027456, at \*5), or when the plaintiff "brings a derivative suit or represents a class."  *Tonkawa Tribe*, 2021 WL 3847802, at \*5 (quoting *Belzberg*, 834 F.2d at 739).

Applying these factors, Plaintiffs' choice of forum, the District of Nevada, is entitled to no deference here.  Fifteen of 17 Plaintiffs named in these actions do not reside in Nevada.  And Nevada has *no* connection—much less a significant connection—to the activities alleged in the complaints, as none of the alleged facts underlying Plaintiffs' claims have any nexus to Nevada.  Plaintiffs do not allege that any of Defendants' alleged conduct took place in Nevada.  Nor do Plaintiffs allege that relevant witnesses or documents exist in Nevada (they do not).  *See supra* at pp. 17–20; *see also Cont'l Auto.*, 2019 WL 6735604, at \*11 (plaintiff's choice of forum entitled

Gibson, Dunn & Crutcher LLP

to little weight because the plaintiff did "not allege[] that a substantial part of the events underlying [its] claims took place in California, or that the Northern District of California ha[d] a special local interest in the issues raised"). Moreover, Plaintiffs brought each of these actions on behalf of putative classes, which further minimizes the weight of their choice of forum; that two Plaintiffs are domiciled in Nevada "is no more forceful than the link between the thousands of potential class members and their respective districts, a roster which surely includes every district court in the nation." *Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at \*4 (N.D. Cal. Nov. 10, 2003). Accordingly, Plaintiffs' choice of forum here is entitled to little or no weight.

### 8. Texas And Nevada Are Equally Familiar With The Governing Law But Texas Courts Are More Familiar With The Oil And Gas Industry

The last factor—"the state that is most familiar with the governing law"—weighs slightly in favor of transfer or, at minimum, is neutral. *Jones*, 211 F.3d at 498. In general, federal courts across districts are equally familiar with and capable of adjudicating claims arising under federal antitrust law. *E.g.*, *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014). Federal courts are also equally familiar with and capable of adjudicating claims arising under the laws of various states (*see Barnstormers, Inc. v. Wing Walkers, LLC*, 2010 WL 2754249, at \*3 (S.D. Cal. July 9, 2010))—particularly where, as here, these cases are "first and foremost … purported nationwide antitrust class action[s] under the Sherman Act." *Funeral Consumers*, 2005 WL 2334362, at \*6.[7] But judicial efficiency and economy would still be served by transfer given Texas courts' familiarity with the oil and gas industry that has long resided and been headquartered in Texas. *See Lens.com*, 2012 WL 1155470, at \*3 (judicial economy may be served if case transferred to a judge familiar with subject matter underlying the parties' dispute).[8]

---

[7] Plaintiffs suggested during the status conference that it was somehow relevant to the transfer analysis that Texas state law claims are not being asserted because Texas antitrust law does not permit indirect purchaser damages actions. This fact has no relevance to the transfer analysis, as the federal claims, which provide subject matter jurisdiction, arise under the Sherman Act, and federal courts in Texas are equally familiar with the Sherman Act as federal courts in Nevada. And Nevada is only one of 28 states (and the District of Columbia) whose antitrust laws have been asserted across the various complaints. The federal courts in Texas are equally equipped to apply the laws of the other states as this federal court in Nevada.

[8] Houston, for example, is regarded as the "Energy Capital of the World." *Energy*, GREATER HOUSTON PARTNERSHIP, https://tinyurl.com/ms9b22kx (last visited March 22, 2024).

Gibson, Dunn & Crutcher LLP

1

## V.    CONCLUSION

2    This Court should transfer these actions to the Western District of Texas (Midland/Odessa

3    Division) or, in the alternative, to the Northern District or Southern District of Texas.

4

5    Respectfully submitted,[9]

6    Dated:  March 22, 2024

7

8    _/s/ Samuel G. Liversidge_                          _/s/ Michael W. Scarborough_
     Samuel G. Liversidge (*pro hac vice*)               Michael W. Scarborough (*pro hac vice*)
9    Jay P. Srinivasan (*pro hac vice*)                  Dylan I. Ballard (*pro hac vice*)
     S. Christopher Whittaker (*pro hac vice*)           VINSON & ELKINS LLP
10   GIBSON, DUNN & CRUTCHER LLP                          555 Mission Street, Suite 2000
     333 South Grand Avenue                              San Francisco, CA 94105
11   Los Angeles, CA  90071-3197                         Telephone: (415) 979–6900
     Telephone:  213.229.7000                            mscarborough@velaw.com
12   sliversidge@gibsondunn.com                          dballard@velaw.com
     jsrinivasan@gibsondunn.com
13   cwhittaker@gibsondunn.com
                                                         Craig P. Seebald (*pro hac vice*)
14   Boris Bershteyn (*pro hac vice*)                    Adam L. Hudes (*pro hac vice*)
     Karen Hoffman Lent (*pro hac vice*)                 Stephen M. Medlock (*pro hac vice*)
15   SKADDEN, ARPS, SLATE, MEAGHER                       VINSON & ELKINS LLP
        & FLOM LLP                                       2200 Pennsylvania Avenue NW
16   One Manhattan West                                  Suite 500 West
     New York, NY  10001-8602                            Washington, DC 20037
17   Telephone:  212.735.3000                            Telephone: (202) 639-6500
     boris.bershteyn@skadden.com                         cseebald@velaw.com
18   karen.lent@skadden.com                              ahudes@velaw.com
                                                         smedlock@velaw.com
19   W. West Allen (NV Bar No. 5566)                     Kristen T. Gallagher (NV Bar No. 9561)
     HOWARD & HOWARD ATTORNEYS                            McDONALD CARANO LLP
20      PLLC                                             2300 West Sahara Ave., Suite 1200
     3800 Howard Hughes Parkway, Suite 1000              Las Vegas, NV 89102
21   Las Vegas, NV 89169                                 kgallagher@mcdonaldcarano.com
     Telephone:  702.667.4843
22   wallen@howardandhoward.com                          *Attorneys for Defendant*
                                                         *PERMIAN RESOURCES CORPORATION*
23   *Attorneys for Defendant*
     *PIONEER NATURAL RESOURCES*
24   *COMPANY*

25

26

27

28
     ---
     [9] The *pro hac vice* designations reflect the admission status of counsel in *Rosenbaum*, Case No.
     2:24-cv-00103-GMN-MDC.  *Pro hac vice* applications in the other related cases are forthcoming
     to the extent required by the Court.

Gibson, Dunn &
Crutcher LLP

1

2   /s/ J. Colby Williams                                      /s/ Christopher E. Ondeck
    J. Colby Williams, Esq. (NV Bar No. 5549)                  Christopher E. Ondeck (pro hac vice)
3   Philip R. Erwin, Esq. (NV Bar No. 11563)                   Stephen R. Chuk (pro hac vice)
    CAMPBELL & WILLIAMS                                        PROSKAUER ROSE LLP
4   710 South Seventh Street, Suite A                          1001 Pennsylvania Avenue NW
    Las Vegas, Nevada 89101                                    Washington, DC 20004
5   Telephone:  (702) 382-5222                                 Telephone: (202) 416-6800
    jcw@cwlawlv.com                                            condeck@proskauer.com
6   pre@cwlawlv.com                                            schuk@proskauer.com

7   Marguerite M. Sullivan (pro hac vice)                      Kyle A. Casazza (pro hac vice)
    Jason D. Cruise (pro hac vice forthcoming)                 PROSKAUER ROSE LLP
8   LATHAM & WATKINS LLP                                       2029 Century Park East, Suite 2400
    555 Eleventh Street, N.W., Suite 1000                      Los Angeles, CA 90067-3010
9   Washington, D.C. 20004                                     Telephone: (310) 284-5677
    Telephone: (202) 637-2200                                  kcasazza@proskauer.com
10  Marguerite.Sullivan@lw.com
    Jason.Cruise@lw.com                                        Michael Burrage (pro hac vice)
11                                                             WHITTEN BURRAGE
    Lawrence E. Buterman (pro hac vice)                        512 North Broadway Avenue, Ste 300
12  LATHAM & WATKINS LLP                                       Oklahoma City, OK 73102
    1271 Avenue of the Americas                                Telephone: (888) 783-0351
13  New York, NY 10020                                         mburrage@whittenburragelaw.com
    Telephone:  (212) 906-1200
14  Lawrence.Buterman@lw.com                                   Attorneys for Defendant
                                                               CONTINENTAL RESOURCES, INC.
15  Attorneys for Defendant
    CHESAPEAKE ENERGY CORPORATION

16

17  /s/ Kristen L. Martini                                     /s/ John M. Taladay
    Kristen L. Martini (NV Bar No. 11272)                      John M. Taladay (pro hac vice)
18  E. Leif Reid (NV Bar No. 5750)                             Christopher Wilson (pro hac vice)
    LEWIS ROCA LLP                                             Kelsey Paine (pro hac vice)
19  3993 Howard Hughes Parkway, Suite 600                      Megan Tankel (pro hac vice)
    Las Vegas, NV 89169                                        BAKER BOTTS L.L.P.
20  Telephone:  (775) 321-3415                                 700 K Street N.W.
    lreid@lewisroca.com                                        Washington, D.C. 20001-5692
21  Jeffrey L. Kessler (pro hac vice)                          Telephone:  (202) 639-7909
    Jeffrey J. Amato (pro hac vice)                            john.taladay@bakerbotts.com
22  WINSTON & STRAWN LLP                                       christopher.wilson@bakerbotts.com
    200 Park Avenue                                            kelsey.paine@bakerbotts.com
23  New York, New York 10166                                   megan.tankel@bakerbotts.com
    Telephone:  (212) 294-6700
24  jkessler@winston.com                                       James J. Pisanelli, Esq. (NV Bar No. 4027)
    jamato@winston.com                                         Debra L. Spinelli, Esq. (NV Bar No. 9695)
25                                                             PISANELLI BICE PLLC
    Thomas M. Melsheimer (pro hac vice)                        400 South 7th Street, Suite 300
26  Thomas B. Walsh, IV (pro hac vice)                         Las Vegas, Nevada 89101
    WINSTON & STRAWN LLP                                       Telephone:  (702) 214-2100
27  2121 N. Pearl Street, Suite 900                            jjp@pisanellibice.com
    Dallas, TX 75201                                           dls@pisanellibice.com
28  Telephone:  (212) 294-6700
    tmelsheimer@winston.com                                    Counsel for Defendant

Gibson, Dunn &
Crutcher LLP

twalsh@winston.com

*Attorneys for Defendant*
*DIAMONDBACK ENERGY, INC.*

*EOG RESOURCES, INC.*


/s/ Nicholas J. Santoro
Nicholas J. Santoro (NV Bar No. 532)
F. Thomas Edwards (NV Bar No. 9549)
HOLLEY DRIGGS LTD
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone:  (702) 791-0308
nsantoro@nevadafirm.com
tedwards@nevadafirm.com

Kevin S. Schwartz (*pro hac vice*)
David A. Papirnik (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
kschwartz@wlrk.com
dapapirnik@wlrk.com

*Attorneys for Defendant*
*HESS CORPORATION*

/s/ Patrick G. Byrne
Patrick G. Byrne (NV Bar No. 7636)
Bradley T. Austin (NV Bar No. 13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone:  (702) 784-5200
pbyrne@swlaw.com
baustin@swlaw.com

Devora W. Allon (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com
Telephone: 212-446-5967

Jeffrey J. Zeiger (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
jzeiger@kirkland.com
Telephone: 312-862-3237

Akhil K. Gola (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
akhil.gola@kirkland.com
Telephone: 202-389-3256

*Attorneys for Defendant*
*OCCIDENTAL PETROLEUM*
*CORPORATION*

25

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on this date, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

DATED: March 22, 2024                    GIBSON, DUNN & CRUTCHER LLP

                                        */s/ Samuel G. Liversidge*
                                        Samuel G. Liversidge

                                        *Attorneys for Defendant*
                                        *PIONEER NATURAL RESOURCES COMPANY*

Gibson, Dunn &
Crutcher LLP

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| A | Table of Complaint Citations | 1 |
| B | Declaration of Miranda Rimer | 5 |
| C | Declaration of Bill Caraway | 5 |
| D | Declaration of Matthew Mathis | 6 |
| E | Declaration of Tabitha McChesney | 5 |
| F | Declaration of Kimberly Franklin | 5 |
| G | Declaration of Dustin Lewis | 6 |
| H | Declaration of Matt Thompson | 5 |
| I | Declaration of Jason Wiley | 4 |

Gibson, Dunn & Crutcher LLP