GIBSON, DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE (*pro hac vice*)
JAY P. SRINIVASAN (*pro hac vice*)
S. CHRISTOPHER WHITTAKER (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (NV Bar No. 5566)
3800 Howard Hughes Parkway
Suite 1000
Las Vegas, NV 89169
Telephone: 702.667.4843
Facsimile: 702.567.1568
Wallen@howardandhoward.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BORIS BERSHTEYN (*pro hac vice*)
KAREN HOFFMAN LENT (*pro hac vice*)
One Manhattan West
New York, NY 10001-8602
Telephone: 212.735.3000
Facsimile: 917.777.2000
boris.bershteyn@skadden.com
karen.lent@skadden.com

*Attorneys for Defendant*
*PIONEER NATURAL RESOURCES COMPANY*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

ROSENBAUM, *et al.*,

Plaintiffs,

v.

PERMIAN RESOURCES CORP., *et al.*,

Defendants.

CASE NO. 2:24-cv-00103-MMD-MDC

**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

*[Caption Continues on Following Page]*

| | |
|---|---|
| ANDREW CAPLEN INSTALLATIONS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00150-MMD-MDC |
| THESE PAWS WERE MADE FOR WALKIN' LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00164-MMD-MDC |
| JOHN MELLOR, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-CV-00253-MMD-MDC |
| BRIAN COURTMANCHE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00198-MMD-MDC |

*[Caption Continues on Following Page]*

| | |
|---|---|
| LAURIE OLSEN SANTILLO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00279-MMD-MDC |
| RICHARD BEAUMONT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00298-MMD-MDC |
| BARBARA AND PHILLIP MACDOWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00325-MMD-MDC |
| WESTERN CAB COMPANY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PERMIAN RESOURCES CORP., *et al.*,<br><br>Defendants. | CASE NO. 2:24-cv-00401-MMD-MDC |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Plaintiffs Could Have Sued Defendants In The Western, Northern, And Southern Districts Of Texas ........ 2
1. Hess Is Subject To Specific Personal Jurisdiction In Texas ........ 2
2. The Ninth Circuit's Interpretation Of The Clayton Act Also Supports Transfer To The Western, Northern, And Southern Districts Of Texas ........ 4
B. The Interests Of Justice And Convenience Favor Transfer ........ 6
1. The Parties Contacts With The Western District Of Texas Favor Transfer ........ 6
2. Plaintiffs Allege That The Claim-Related Conduct Occurred In Texas ........ 7
3. The Costs And Convenience Of Litigation Favor Transfer ........ 8
4. Texas Courts Have A Greater Ability To Compel Third-Party Testimony ........ 9
5. Texas Offers Greater Access To Sources Of Proof ........ 10
6. Plaintiffs Allege The Purported Agreement Arose Out Of Conduct In Texas ........ 10
7. Plaintiffs' Choice Of Forum Is Entitled To Little Weight ........ 11
8. Texas Courts Are Equally Familiar With The Governing Law ........ 12
III. CONCLUSION ........ 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 2014 WL 12994191 (C.D. Cal. Sept. 18, 2014) ....4

*Alvarado v. W. Range Ass'n*, 2023 WL 4534624 (D. Nev. Mar. 21, 2023) ....8

*Avery Dennison Corp. v. 3M Co.*, 2011 WL 13116731 (C.D. Cal. Feb. 2, 2011) ....5

*Blixseth v. Fed. Bureau of Investigation*, 2021 WL 1991258 (D. Nev. May 18, 2021) ....7, 10

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....3

*Burgess v. HP, Inc.*, 2017 WL 467845 (N.D. Cal. Feb. 3, 2017) ....5

*Ceats, Inc. v. Orbitz Worldwide, Inc.*, 2014 WL 12789820 (D. Nev. July 3, 2014) ....4, 10

*In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010) ....12

*Cont'l Research Corp. v. Drummond Am. Corp.*, 2007 WL 4287873 (E.D. Mo. Dec. 6, 2007) ....6

*Continental Auto. Sys., Inc. v. Avanci, LLC*, 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019) ....5, 8, 11

*Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768 (N.D. Cal. 2015) ....7, 11

*Duke Energy Int'l, LLC v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010) ....12

*Ed. Planeta Mexicana, S.A. de C.V. v. Argov*, 2012 WL 3027456 (D. Nev. July 23, 2012) ....10

*In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435 (D.N.J. 2018) ....12

*Estates of Van Coley v. Hillenbrand Indus., Inc.*, 2007 WL 9761346 (S.D. Tex. Aug. 27, 2007) ....12

*EuroTec Vertical Flight Soln's, LLC v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240 (N.D. Tex. 2019) ....12

*First 100 LLC v. Bank of Am., N.A.*, 2017 WL 4227937 (D. Nev. Sept. 21, 2017) ....5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S. 351 (2021) .......... 3, 4

*Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) .......... 11, 12

*In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) .......... 7, 12

*In re Galectin Therapeutics, Inc. Sec. Litig.*, 2015 WL 260881 (D. Nev. Jan. 21, 2015) .......... 11

*Garcia v. 3M Co.*, 2009 WL 3837243 (N.D. Cal. Nov. 16, 2009) .......... 12

*Global House Buyer Ltd. v. Clark*, 2017 WL 8181023 (C.D. Cal. Mar. 21, 2017) .......... 4

*Griggs v. Credit Sols. Of Am., Inc.*, 2010 WL 2653474 (E.D. Mo. June 29, 2010) .......... 8

*Hackwith v. Apple Inc.*, 2009 WL 10674053 (C.D. Cal. Aug. 12, 2009) .......... 10

*Hadnagy v. Moss*, 2023 WL 8622375 (D. Nev. Dec. 12, 2023) .......... 12

*Hasbrouck v. Texaco, Inc.*, 663 F.2d 930 (9th Cir. 1981) .......... 5

*Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......... 8, 11

*Hofbräuhaus of Am., LLC v. Oak Tree Mgmt. Servs., Inc.*, 2023 WL 24179 (D. Nev. Jan. 3, 2023) .......... 5

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .......... 5

*Huntley v. Sprout Foods, Inc.*, 2022 WL 138015 (D. Conn. Jan. 14, 2022) .......... 9

*Italian Colors Restr. v. Am. Express Co.*, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) .......... 7, 11

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) .......... 3

*In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932 (N.D. Cal. 2021) .......... 4

*La Michoacana Plus Ice Cream Parlor Corp. v. Windy City Paletas, Inc.*, 2024 WL 1376987 (D. Nev. Mar. 31, 2024) .......... 12

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) .......... 1, 7, 11

*Lucarelli v. DVA Renal Healthcare, Inc.*,
2008 WL 182246 (D. Nev. Jan. 16, 2008) .......... 9

*Metz v. U.S. Life Ins. Co.*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......... 11

*Meza v. Proctor & Gamble Co.*,
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......... 11

*Mina v. Red Robin Int'l, Inc.*,
2020 WL 4037163 (C.D. Cal. Mar. 3, 2020) .......... 11

*N. Brevard Cty. Hosp. Dist. v. C.R. Bard, Inc.*,
648 F. Supp. 3d 401 (N.D.N.Y. 2022) .......... 6

*NXP B.V. v. Broadcom Corp.*,
2014 WL 12703746 (D. Nev. Feb. 20, 2014) .......... 10

*Pac. Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968) .......... 2, 6

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......... 4

*Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*,
353 F.3d 916 (11th Cir. 2003) .......... 10

*In re Principal U.S. Prop. Account Litig.*,
2010 WL 1645042 (S.D.N.Y. Apr. 22, 2010) .......... 9

*Ravin Crossbows, LLC v. Hunter's Mfg. Co.*,
2023 WL 2572288 (D. Nev. Mar. 17, 2023) .......... 10

*Renna v. Becerra*,
535 F. Supp. 3d 931 (S.D. Cal. 2021) .......... 5

*Rosen Materials of Nevada, LLC v. MDA LLC*,
2018 WL 3232832 (D. Nev. Feb. 7, 2018) .......... 5

*Rotondo v. Bastiat USA, Inc.*,
2020 WL 13303704 (C.D. Cal. Aug. 20, 2020) .......... 10

*Rubio v. Monsanto Co.*,
181 F. Supp. 3d 746 (C.D. Cal. 2016) .......... 5

*Ruybal v. Liberty Mut. Fire Ins. Co.*,
2015 WL 3795788 (D. Nev. June 16, 2015) .......... 5

*Saunders v. USAA Life Ins. Co.*,
71 F. Supp. 3d 1058 (N.D. Cal. 2014) .......... 7, 12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) .......... 12

*Tonkawa Tribe of Indians of Okla. v Scientific Games Corp.*,
2021 WL 3847802 (D. Nev. Aug. 27, 2021) .......... 11

*Unwired Planet LLC v. Google Inc.*, 2013 WL 12340308 (D. Nev. Aug. 19, 2013) ....................11

*Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007) ....................7

*VolP-Pal.com, Inc. v. Twitter, Inc.*, 2018 WL 3543031 (D. Nev. July 23, 2018) ....................5

*Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930 (N.D. Cal. 2020) ....................12

*Zuniga v. United Can Co.*, 812 F.2d 443 (9th Cir. 1987) ....................6

**Statutes**

28 U.S.C. § 1391 ....................3

28 U.S.C. § 1783 ....................10

Nev. Rev. Stat. § 598A.050 ....................12

Nev. Rev. Stat. § 598A.210 ....................12

**Rules**

Fed. R. Civ. P. 45 ....................9

**Treatises**

15 Fed. Prac. & Proc. Juris. § 3848 ....................11

15 Fed. Prac. & Proc. Juris. § 3850 ....................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs do not dispute that none of the alleged acts giving rise to their claims occurred in Nevada and that none of the Defendants has any relevant contacts with Nevada. Nor do Plaintiffs dispute that most Defendants are based in Texas, most of the alleged conduct occurred in Texas, and much of Defendants' shale oil is produced and sold in Texas. Plaintiffs nevertheless insist these cases should remain in Nevada, relying primarily on three arguments. Each lacks merit.

*First*, Plaintiffs contend these cases could not have been filed in the Western or Northern Districts of Texas because Defendant Hess is not subject to personal jurisdiction in Texas (though they concede the actions could have been filed in the Southern District). That is wrong. Plaintiffs' claims arise out of their overarching allegation that Defendants—including Hess—attended meetings in Texas where they discussed their "cooperation" and "reaffirm[ed] their [alleged] agreement to restrict production." *Rosenbaum* Compl. ¶¶ 91, 111. The Wiley Declaration also shows that Hess's production-related decisions—including those related to shale oil—occur in Texas, and these cases relate to each Defendant's alleged decision to restrict production.

*Second*, Plaintiffs stress that *two* named Plaintiffs are from Nevada, and that each Complaint asserts a Nevada claim. But Plaintiffs seek to represent nationwide classes on their federal claims and many subclasses on their claims under the laws of 28 states and the District of Columbia, requiring any court to interpret and apply the laws of numerous other jurisdictions and rendering a single Nevada claim immaterial to the analysis. More fundamentally, a plaintiff's choice of forum is entitled to little weight in a class action—especially where, as here, the parties have minimal "contacts with the forum" and "the operative facts [did] not occur[]" there. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Plaintiffs also ignore that 15 of 17 named Plaintiffs are not from Nevada, seven of nine cases have no Nevada plaintiff, and 13 Plaintiffs are from east of Texas—making the Texas districts at issue more convenient forums for most Plaintiffs.

*Third*, Plaintiffs say transferring these cases to Texas would only shift the inconvenience from Defendants to Plaintiffs. That is wrong. Transfer would be more convenient for 13 named Plaintiffs, all eight Defendants, and any number of party and third-party witnesses who reside in

or near Texas.  By contrast, Nevada appears to be convenient only for two named Plaintiffs.  But because these are nationwide class actions that also involve numerous other state law claims, those two Plaintiffs are unlikely to play a notable role in the day-to-day management of the cases.

At bottom, the only connection these cases have to Nevada is they were filed here.  But that is not enough to overcome the strong showing that Defendants have made demonstrating these cases belong in the Western District or, alternatively, the Northern or Southern Districts of Texas.  *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 955 (9th Cir. 1968).  Nor is there any merit to Plaintiffs' contention that Defendants are "judge shopping" by seeking transfer to the Midland/Odessa Division of the Middle District of Texas.  Plaintiffs chose to file Complaints that focus on shale oil production activities in the Permian Basin, which is largely in the Midland/Odessa Division.  And Plaintiffs offer no basis to question whether the one active Article III judge in Midland would be anything but fair and impartial.  In any event, Defendants alternatively seek transfer to the Northern and Southern Districts of Texas—where more than 30 active Article III judges preside.  The Court should transfer these cases to Texas.

## II.   ARGUMENT

### A.   Plaintiffs Could Have Sued Defendants In The Western, Northern, And Southern Districts Of Texas

Plaintiffs do not dispute that seven of eight Defendants are subject to personal jurisdiction in Texas, or that these actions could have been brought in the Southern District of Texas.  But Plaintiffs contend they could not have brought these cases in the Western or Northern Districts because one Defendant—Hess—is not subject to specific personal jurisdiction in Texas under the traditional analysis (and is subject to personal jurisdiction only in the Southern District under the Clayton Act analysis).  Plaintiffs are wrong on both counts.

#### 1.   Hess Is Subject To Specific Personal Jurisdiction In Texas

Plaintiffs' allegations and the undisputed evidence show there is specific personal jurisdiction in Texas over Hess.  Plaintiffs say the Court should apply Fifth Circuit, not Ninth Circuit, law to determine whether personal jurisdiction exists in Texas and venue is proper in the proposed transferee districts.  As explained in Part II.A.2, that is wrong.  And as to specific jurisdiction under the traditional analysis and venue under the general statute, it makes no

difference. Congress and the Supreme Court have laid out the standards, and they are met here.

As for venue, in a case involving multiple defendants, venue is proper in any district in which at least one defendant's contacts within the district would be sufficient to subject it to personal jurisdiction in that district if that district were a separate state, so long as all other defendants are subject to personal jurisdiction in the state in which the district sits. 28 U.S.C. § 1391(b)(1), (c)(2), (d). Several Defendants are headquartered in the Western District, and Defendant Pioneer is headquartered in the Northern District, so at least one Defendant would be subject to personal jurisdiction in the Western District and the Northern District of Texas if those districts were separate states. Mot. at 4–6, 8–9. Plaintiffs do not dispute these facts, which establish proper venue as to all Defendants in the Western District and the Northern District, provided that Hess is subject to specific personal jurisdiction in Texas.

Specific jurisdiction is proper when a defendant (a) purposefully directs its activities toward the forum or purposefully avails itself of forum benefits, and (b) the claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Court*, 592 U.S. 351, 359 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Specific jurisdiction is analyzed on a statewide basis. *See Ford*, 592 U.S. at 358; *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion).

Plaintiffs do not dispute that Hess has "meaningful ties to [Texas]" sufficient to satisfy part (a). Opp. at 10. As for part (b), Plaintiffs' claims "arise out of or relate to" Hess's contacts with Texas for two independent reasons. *See Ford*, 592 U.S. at 362 (explaining "[t]he first half of [the 'arise out of or relate to'] standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing").

*First*, Plaintiffs allege that all Defendants—including specifically "executives from Hess Corp."—"discuss[ed] their internal cooperation and the overall cooperation with OPEC," and "reaffirm[ed] their [alleged] agreement to restrict production" at meetings *in Texas*. *Rosenbaum* Compl. ¶¶ 29, 59–66, 75–76, 91, 111; *see also* Opp. at 18–19 (arguing agreement was allegedly formed by C-Suite employees, who "met and discussed shale oil production at events and conferences," most of which were in Texas and none of which were in Nevada). Plaintiffs also

identify these purported meetings in their "plus factor" allegations, which they say "support an inference that Defendants' actions constituted a … price-fixing conspiracy" and "not merely parallel conduct." *Id.* ¶ 111. Thus, the alleged key meetings in Texas involving all Defendants, including Hess, give rise and relate to Plaintiffs' claims that Defendants agreed to restrict the production of shale oil. *See Ford*, 592 U.S. at 362 ("that the plaintiff's claim came about because of the defendant's in-state conduct" was sufficient to create specific jurisdiction); *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 968 (N.D. Cal. 2021) (finding specific jurisdiction existed over defendant that negotiated alleged anticompetitive agreement "with a California-based … company in part by attending meetings that took place in California").[1]

*Second*, while Plaintiffs attempt to manufacture ambiguity, the Wiley Declaration demonstrates Hess's contacts with Texas are related to Plaintiffs' claims. Plaintiffs contend Defendants agreed to restrict shale oil production. *E.g.*, *Rosenbaum* Compl. ¶¶ 82–83, 89, 100. The Wiley Declaration establishes Hess's decisions about *shale oil operations* are made in its Houston office, stating: "Hess's Houston office has been the anchor of its global exploration-and-development operations since 1994, *including for shale oil*," and that Hess's senior leadership in charge of "exploration and *production*" are based in that office. Mot. Ex. I ¶ 3 (emphases added). The undisputed evidence is that Hess's decisions about shale oil operations and production are made in Houston, and thus Hess's Texas contacts undeniably "relate to" Plaintiffs' claim that Hess agreed to restrict the production of shale oil.[2] *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1162 (S.D. Cal. 2018) (specific jurisdiction existed where acts allegedly taken "to further the conspiracy" occurred in the forum).

**2. The Ninth Circuit's Interpretation Of The Clayton Act Also Supports Transfer To The Western, Northern, And Southern Districts Of Texas**

---

[1] Plaintiffs criticize the Wiley Declaration (Mot. Ex. I) for not confirming the allegations in Plaintiffs' Complaints (*see* Opp. at 10), but of course a defendant need not prove a plaintiff's case to justify transfer, and this Court may rely on the allegations of the Complaints to determine whether these actions might have been brought in Texas at the time of filing. *E.g.*, *Global House Buyer Ltd. v. Clark*, 2017 WL 8181023, at *8 (C.D. Cal. Mar. 21, 2017); *A.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 2014 WL 12994191, at *2 (C.D. Cal. Sept. 18, 2014).

[2] Courts routinely rely on declarations to inform their Section 1404(a) analysis. *E.g.*, *Ceats, Inc. v. Orbitz Worldwide, Inc.*, 2014 WL 12789820, at *2–3 (D. Nev. July 3, 2014) (Du, J.).

Plaintiffs do not dispute that under the Ninth Circuit's interpretation of the Clayton Act, "any federal court" would have personal jurisdiction and venue over Hess, including the three Texas districts at issue. Opp. at 12. But Plaintiffs argue this Court should ignore Ninth Circuit law and "predict" how the Fifth Circuit would interpret the Clayton Act. *Id.* at 13. That is wrong.

"District courts are bound by the law of their own circuit." *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981). That means "[t]his Court is bound by the decisions of the Ninth Circuit" (*First 100 LLC v. Bank of Am., N.A.*, 2017 WL 4227937, at *2 (D. Nev. Sept. 21, 2017)), including those interpreting the U.S. Constitution (*e.g.*, *Renna v. Becerra*, 535 F. Supp. 3d 931, 937 (S.D. Cal. 2021)) and federal statutes. *E.g.*, *Ruybal v. Liberty Mut. Fire Ins. Co.*, 2015 WL 3795788, at *2 (D. Nev. June 16, 2015). That general rule applies equally to motions to transfer, as "the law applicable under Section 1404(a) is the law of the circuit in which the district court sits." *VolP-Pal.com, Inc. v. Twitter, Inc.*, 2018 WL 3543031, at *3 (D. Nev. July 23, 2018).

Thus, as noted in Defendants' Motion (Mot. at 11 n.5), the courts in *Continental Auto. Sys., Inc. v. Avanci, LLC*, 2019 WL 6735604, at *6 (N.D. Cal. Dec. 11, 2019) (Koh., J.), and *Avery Dennison Corp. v. 3M Co.*, 2011 WL 13116731, at *3 (C.D. Cal. Feb. 2, 2011), applied the Ninth Circuit's interpretation of the Clayton Act in concluding the respective antitrust actions could have been brought in the transferee districts. Plaintiffs say *Continental Automotive* and *Avery* did not address personal jurisdiction and venue, since those issues "were uncontested." Opp. at 6 n.10. But the "might have been brought" requirement cannot be waived. *Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960); *Rubio v. Monsanto Co*, 181 F. Supp. 3d 746, 760 (C.D. Cal. 2016). And so, both courts independently analyzed whether the actions could have been filed in the transferee districts, and applied Ninth Circuit law in doing so. *Cont'l Auto.*, 2019 WL 6735604, at *6–10; *Avery*, 2011 WL 13116731, at *3.[3]

Still, Plaintiffs insist this Court should endeavor to "predict" whether the Fifth Circuit would find that Hess is subject to personal jurisdiction in Texas under the Clayton Act. Opp. at 5,

[3] Numerous courts have also applied Ninth Circuit law to determine whether an action might have been brought in the transferee district. *E.g.*, *Hofbräuhaus of Am., LLC v. Oak Tree Mgmt. Servs., Inc.*, 2023 WL 24179, at *8 (D. Nev. Jan. 3, 2023); *Rosen Materials of Nevada, LLC v. MDA LLC*, 2018 WL 3232832, at *5 (D. Nev. Feb. 7, 2018); *Burgess v. HP, Inc.*, 2017 WL 467845, at *5 (N.D. Cal. Feb. 3, 2017); *Rubio*, 181 F. Supp. 3d at 760–62.

8–13. In particular, Plaintiffs posit that this Court, sitting in and bound by the Ninth Circuit, should conclude that the Fifth Circuit would find the Ninth Circuit's interpretation of the Clayton Act is *wrong* and further deepen the circuit split on the issue. *Id.* at 11–13. But district courts may not attempt "to resolve splits between circuits," especially where, as here, the Ninth Circuit has already addressed the specific issue. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987).

Neither of the two out-of-circuit cases Plaintiffs cite suggests otherwise. *See* Opp. at 5, 13. In the *N. Brevard Cty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d 401 (N.D.N.Y. 2022), line of cases, the court provided no basis for departing from the general rule that district courts are bound by the law of their own circuit. And in *Cont'l Research Corp. v. Drummond Am. Corp.*, 2007 WL 4287873 (E.D. Mo. Dec. 6, 2007), the court did not apply Seventh Circuit personal jurisdiction law (applicable in the transferee district), as Plaintiffs suggest. Opp. at 5–6. Rather, the court said it "must apply the law of the Eighth Circuit"; relied on the text of the general venue statute to confirm the action could have been brought in the transferee district; and did not cite a single Seventh Circuit decision anywhere in its order. *Cont'l Research*, 2007 WL 4287873, at *3.

**B. The Interests Of Justice And Convenience Favor Transfer**

The *Jones* factors overwhelmingly support transfer to any of the Texas districts at issue.

**1. The Parties Contacts With The Western District Of Texas Favor Transfer**

The parties' contacts with the competing forums heavily favor transfer. Indeed, Plaintiffs do not dispute that Defendants have *significant* contacts with Texas and *no* relevant contacts with Nevada. Mot. at 3–6, 14–15.[4] And Plaintiffs concede that 15 of 17 named Plaintiffs also have *no* connection to Nevada, and that most Plaintiffs reside in states thousands of miles away from Nevada, including Maine, New Hampshire, Rhode Island, Connecticut, New York, Pennsylvania, and Minnesota—all of which are much closer to Texas (and its major airports in Dallas and Houston) than Nevada. *Id.* at 6, 13–14, 18; *infra* n.6.

Plaintiffs argue this factor is neutral because *two* of the 17 named Plaintiffs reside in Nevada. Opp. at 17–18. But Plaintiffs seek to represent nationwide injunctive relief classes on

---

[4] Plaintiffs' argument that it is "irrelevant what percentage of Defendants' employees work in offices or on rigs in Texas" (Opp. at 19) is contrary to Ninth Circuit precedent considering where the defendant has offices and employees. *See Pac. Car & Foundry*, 403 F.2d at 954–55.

their federal Sherman Act claim and numerous state-law subclasses. *Rosenbaum* Compl. ¶¶ 122–23. And courts regularly hold that "Plaintiffs' contacts with the forum … are of minimal value in … class action[s]." *Italian Colors Restr. v. Am. Express Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003). For example, in *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 778 (N.D. Cal. 2015), the court transferred a putative class action to Nevada, even though three of the 14 named plaintiffs resided in the transferor district. The court concluded that "Nevada is far more convenient for Defendant" because it is based in Nevada, and that transferring would not "simply shift[] inconvenience between [the] parties" because "eleven named plaintiffs would face the need to travel even if this case was not transferred." *Id.* at 778–79. In *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014), the court similarly transferred a putative class action to the Western District of Texas, even though the Northern District of California was "more convenient to Plaintiffs," because the defendant "is a Texas corporation" and the plaintiffs' choice of forum "is afforded less deference when, as here, the action is brought as a class action." *Id.* at 1060–61. And in *In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *2–4 (N.D. Cal. Sept. 23, 2005), the court transferred a putative nationwide class action to the Southern District of Texas, even though one plaintiff lived in California, because doing so would "drastically reduce the burden" on the defendants headquartered in Houston and nearby cities. The same is true here.

**2. Plaintiffs Allege That The Claim-Related Conduct Occurred In Texas**

The purportedly "operative facts" giving rise to Plaintiffs' claims occurred in Texas (*Belzberg*, 834 F.2d at 739), and there is "no significant connection between [Nevada] and the facts alleged in the complaint[s]." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

Plaintiffs allege Defendants met while attending conferences in Texas to discuss and reaffirm their alleged agreement. *Rosenbaum* Compl. ¶¶ 29, 59–66, 75–76, 91, 111. The alleged acts taken to carry out the purported agreement would have occurred primarily in Texas too. Mot. at 3–6, 16–17. Plaintiffs do not allege that any conduct giving rise to their claims occurred in Nevada or any other state than Texas. Thus, as in *Zuffa*, "Plaintiffs filed these purported class actions in a district where [none] of the operative facts occurred," so "this forum has [no] local interest in adjudicating Plaintiffs' claims." 108 F. Supp. 3d at 779. But Texas's "interest in the

issues raised by these cases is considerably strong since [many] Defendant[s] [are] headquartered there and conduct[] a substantial amount of business" there. *Id.*; *e.g.*, *Blixseth v. Fed. Bureau of Investigation*, 2021 WL 1991258, at *2 (D. Nev. May 18, 2021) (Du, J.); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216–17 (S.D. Cal. 2013).

Plaintiffs' contention that this is "'a case with national or international significance,'" involving an alleged agreement that "would have similar consequences" in both Nevada and Texas (Opp. at 19), both *supports* transfer and undermines any argument that this district has any special interest in these cases. Indeed, in *Continental Automotive*, the court ***granted*** the defendants' motion to transfer from the Northern District of California to the Northern District of Texas where, as here, the plaintiffs did not "allege[] that a substantial part of the events underlying [their] claims took place in California, or that the Northern District of California has a special local interest in the issues raised in the [complaint]." 2019 WL 6735604, at *11. On the contrary, the court held that "the Northern District of Texas's local interest is the greater one because of [a defendant's] presence there." *Id.* at *17. Plaintiffs' reliance on *Alvarado v. W. Range Ass'n*, 2023 WL 4534624, at *10 (D. Nev. Mar. 21, 2023), also is unavailing because the defendant there had "more contacts in Nevada" than in the proposed transferee district. By contrast, no Defendant here has any relevant contacts with Nevada, and none of Plaintiffs' claims arise out of any alleged conduct occurring in Nevada. This factor strongly favors transfer to Texas.[5]

**3. The Costs And Convenience Of Litigation Favor Transfer**

In the class action context, it is "likely that the vast majority of relevant witness testimony will come from Defendant[s'] current and former employees, and that transfer would therefore make this litigation more convenient for those witnesses." *Griggs v. Credit Sols. Of Am., Inc.*, 2010 WL 2653474, at *3 (E.D. Mo. June 29, 2010). The Western District of Texas—and the Northern and Southern Districts of Texas—are more convenient for all Defendants than this district, and for the 13 named Plaintiffs who live closer to Texas than Nevada. Mot. at 6, 17–18.

[5] Plaintiffs say they "allege that Defendants produce shale oil" in various states, and "*do not allege* that Defendants' [purported] agreement impacted shale oil production in one of these states any more or less than any other." Opp. at 19. That makes no sense, given that much of Defendants' production occurs in Texas and none occurs in Nevada—facts Plaintiffs do not dispute.

Plaintiffs' entire argument on this factor is based on the convenience and cost of the competing forums for *counsel*, not for *witnesses*. Opp. at 21–23. But "the great majority of the cases" have held the convenience of counsel is "'irrelevant' or 'improper' to consider." 15 Fed. Prac. & Proc. Juris. § 3850 (citing cases). That is because the transfer statute, Section 1404(a), "expressly refers to convenience of parties and witnesses," but "is silent about counsel." *Id.*[6]

To the extent Plaintiffs invoke the parties' relative means, that is "irrelevant in the class context, since counsel are financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendant are of absolutely no moment." *In re Principal U.S. Prop. Account Litig.*, 2010 WL 1645042, at *5 (S.D.N.Y. Apr. 22, 2010); *see also Huntley v. Sprout Foods, Inc.*, 2022 WL 138015, at *3 (D. Conn. Jan. 14, 2022) (similar). This factor fully favors transfer.

**4. Texas Courts Have A Greater Ability To Compel Third-Party Testimony**

Plaintiffs' own allegations demonstrate the existence of third-party witnesses in Texas that are outside this Court's subpoena power. *E.g.*, *Rosenbaum* Compl. ¶ 59 (Tim Leach of Concho Resources Inc.)[7]; ¶ 64 (Pioneer former CEO Tim Dove)[8]; ¶ 83 (former EOG President and CEO Bill Thomas); ¶ 105 (Tall City Exploration).[9] Witnesses from other oil and gas companies in Texas are likely to be relevant to these cases as well, as Plaintiffs allege that "supermajors" and smaller non-public shale companies started drilling more oil around 2022. *Id.* ¶¶ 104–05. Plaintiffs do not contend this Court can compel the testimony of these third-party witnesses. By contrast, the Western District of Texas—and the Northern and Southern Districts of Texas—may compel testimony from third-party witnesses located in Texas. *See* Fed. R. Civ. P. 45(c)(1)(B).

---

[6] The convenience of counsel weighs in favor of transfer in any event. *First*, the only Nevada lawyers in this case are local, not lead counsel. *See Lucarelli v. DVA Renal Healthcare, Inc.*, 2008 WL 182246, at *4 (D. Nev. Jan. 16, 2008) (no policy favoring retaining venue when only connection to the state is plaintiff's counsel). *Second*, of the twelve lead Plaintiffs' firms in this matter, most have either Texas offices or named counsel that live in the Midwest or East Coast. *Third*, Dallas and Houston each have multiple airports, with the Dallas Fort Worth airport ("DFW") ranking as the second-busiest airport in the U.S. and the Houston airport ("IAH") ranking as the fifteenth-busiest airport. https://www.stratosjets.com/blog/busiest-us-airports. DFW and IAH collectively offer nonstop flights to hundreds of locations, including direct flights to Midland every day. https://www.flightsfrom.com/DFW; https://www.flightsfrom.com/IAH.

[7] Mr. Leach is employed by Conoco Phillips, which is headquartered in Houston. https://tinyurl.com/yrcs4wxz.

[8] *See* Mot. Ex. D ¶ 12 ("Mr. Dove lives in the Northern District of Texas.").

[9] Tall City Exploration is headquartered in Midland. https://www.tallcityexploration.com/.

Plaintiffs do not point to a single non-party witness in Nevada. Instead, they suggest some non-party witnesses "may … live in, or have retired to, Las Vegas … by the time this case goes to trial." Opp. at 20–21. But these speculative musings aside, Plaintiffs cannot identify any non-party witnesses in Nevada, and thus transfer to a forum where non-party witnesses likely reside is favored. *See Ed. Planeta Mexicana, S.A. de C.V. v. Argov*, 2012 WL 3027456, at *7 (D. Nev. July 23, 2012) (factor favors transfer "because no known non-party witnesses exist in Nevada").

Plaintiffs' discussion of Texas courts' inability to compel testimony of OPEC is similarly misplaced, as no district court can compel the testimony of OPEC. *See* 28 U.S.C. § 1783; *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 922 (11th Cir. 2003).

This factor weighs in favor of transfer. *See Ceats*, 2014 WL 12789820, at *4 (granting transfer because one third-party witness resided in transferee district and none resided in Nevada).

**5. Texas Offers Greater Access To Sources Of Proof**

Most witnesses and documents relevant to these cases, including production and sales data, are in Texas—primarily in the Western District of Texas given the volume of shale oil operations there. Mot. at 20. Moreover, "[t]here are no documents, [defense] witnesses, or other evidence in Nevada." *NXP B.V. v. Broadcom Corp.*, 2014 WL 12703746, at *4 (D. Nev. Feb. 20, 2014). Plaintiffs do not suggest otherwise. *See* Opp. at 23. Instead, they argue "the physical location of paper or electronic documents has no bearing on where the case should be heard." *Id.* But "[e]ven in the age of electronic document storage and the Internet, courts favor transfer to the district where relevant documents are physically located." *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, 2023 WL 2572288, at *5 (D. Nev. Mar. 17, 2023); *see also Blixseth*, 2021 WL 1991258, at *2 (the "ease and access to the requested records and any potential agency witnesses to the FOIA requests suggest that the District of Columbia, for purposes of convenience, would be the better venue"). This factor therefore favors transfer. *E.g.*, *Ravin Crossbows*, 2023 WL 2572288, at *5; *Rotondo v. Bastiat USA, Inc.*, 2020 WL 13303704, at *8 (C.D. Cal. Aug. 20, 2020); *Ceats*, 2014 WL 12789820, at *5; *Hackwith v. Apple Inc.*, 2009 WL 10674053, at *5 (C.D. Cal. Aug. 12, 2009).

**6. Plaintiffs Allege The Purported Agreement Arose Out Of Conduct In Texas**

This factor favors transfer because Plaintiffs' case is based on the existence of an alleged

agreement that purportedly arose out of meetings and events in Texas. *See supra* Part II.A.1.

**7. Plaintiffs' Choice Of Forum Is Entitled To Little Weight**

Plaintiffs' "choice of forum alone is not controlling," especially since they seek to represent nationwide classes on their federal claims and numerous subclasses on their state claims. *Hawkins*, 924 F. Supp. 2d at 1214–15. "[W]hen an individual … [seeks to] represent[] a class, the named plaintiff's choice of forum is given less weight" (*Belzberg*, 834 F.2d at 739), even if they "choose[] [their] home forum." *Mina v. Red Robin Int'l, Inc.*, 2020 WL 4037163, at *4 (C.D. Cal. Mar. 3, 2020); *e.g.*, *Tonkawa Tribe of Indians of Okla. v Scientific Games Corp.*, 2021 WL 3847802, at *5 (D. Nev. Aug. 27, 2021); *In re Galectin Therapeutics, Inc. Sec. Litig.*, 2015 WL 260881, at *3 (D. Nev. Jan. 21, 2015); 15 Fed. Prac. & Proc. Juris. § 3848 & n.15. That is especially true where, as here, the parties have nearly no "contacts with the forum" and "the operative facts" did not occur in the forum. *Belzberg*, 834 F.2d at 739; *supra* Parts II.B.1 & 2; Mot. at 12–17; *e.g.*, *Cont'l Auto.*, 2019 WL 6735604, at *11; *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009).

Plaintiffs argue that two named Plaintiffs reside in Nevada, and that all Plaintiffs assert Nevada claims on behalf of putative classes of Nevada residents but do not assert Texas claims. Opp. at 15–17. But seven of the nine actions do not involve a Nevada plaintiff, and the "majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant." *Zuffa*, 108 F. Supp. 3d at 779. Nevada is only one of nearly 30 jurisdictions whose laws are implicated here, meaning the two Nevada Plaintiffs are no more significant than the millions of individuals who live in the jurisdictions whose state laws are asserted in these cases. *See Italian Colors Rest.*, 2003 WL 22682482, at *3–4. And that Plaintiffs do not assert Texas claims is immaterial, given Texas's strong interest in these actions (*supra* Part II.B.2), and the presence of numerous other state laws that Texas courts are able to adjudicate. *Infra* Part II.B.8. Indeed, courts have granted motions to transfer even when the putative class representative did not assert a claim under the laws of the transferee state. *E.g.*, *Meza v. Proctor & Gamble Co.*, 2023 WL 3267861, at *1–2 (C.D. Cal. Apr. 27, 2023) (transferring to Ohio even though California plaintiff sought to represent a California subclass and a nationwide class, but not an Ohio subclass); *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *1–3 (N.D. Cal. Dec. 14, 2007) (same).

Plaintiffs cite this Court's decision in *Unwired Planet LLC v. Google Inc.*, 2013 WL 12340308, at *3 (D. Nev. Aug. 19, 2013), but that case is inapposite because it involved a *single* Nevada plaintiff and was *not* a class action. By contrast, Plaintiffs seek to represent a nationwide class and numerous subclasses whose "potential class members are nationwide." *Garcia v. 3M Co.*, 2009 WL 3837243, at *2 (N.D. Cal. Nov. 16, 2009). And of those putative class members, "only a small percentage … are [likely Nevada] residents," while a large number are likely Texas residents. *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 938 (N.D. Cal. 2020).[10]

**8. Texas Courts Are Equally Familiar With The Governing Law**

"[W]here a federal court's jurisdiction is based on the existence of a federal question, as it is here, one forum's familiarity with supplemental state law claims should not override other factors favoring a different forum." *Foster*, 2007 WL 4410408, at *6; *e.g.*, *La Michoacana Plus Ice Cream Parlor Corp. v. Windy City Paletas, Inc.*, 2024 WL 1376987, at *4 (D. Nev. Mar. 31, 2024). In arguing otherwise, Plaintiffs ignore that the "caselaw favoring the district 'at home' on the controlling law has arisen in the *diversity* context, not the *federal-question* context." *In re Funeral Consumers*, 2005 WL 2334362, at *6. And they ignore that Nevada's antitrust statute expressly says it "shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. § 598A.050. In any event, regardless of whether this case is in Nevada or Texas, the court will have to apply the laws of at least 29 other jurisdictions. And "federal courts are deemed capable of applying the substantive law of other states." *Hadnagy v. Moss*, 2023 WL 8622375, at *4 (D. Nev. Dec. 12, 2023); *Saunders*, 71 F. Supp. 3d at 1061.[11]

## III. CONCLUSION

Defendants' Motion should be granted.

---

[10] *Compare* https://www.census.gov/quickfacts/fact/table/NV,US/PST045223 (Nevada), *with* https://www.census.gov/quickfacts/fact/table/TX,US/PST045223 (Texas).

[11] Texas federal courts have applied numerous state antitrust laws. *E.g.*, *EuroTec Vertical Flight Soln's, LLC v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240 (N.D. Tex. 2019) (California and Kansas); *Duke Energy Int'l, LLC v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010) (North Carolina); *Estates of Van Coley v. Hillenbrand Indus., Inc.*, 2007 WL 9761346 (S.D. Tex. Aug. 27, 2007) (14 states, including Nevada). And courts outside Nevada have applied Nev. Rev. Stat. § 598A.210. *E.g.*, *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 453–54 (D.N.J. 2018); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5094289, at *5 (N.D. Cal. Dec. 8, 2010); *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 239 (M.D. Pa. 2010).

Respectfully submitted,[12]

Dated: April 26, 2024

/s/ *Samuel G. Liversidge*
Samuel G. Liversidge (*pro hac vice*)
Jay P. Srinivasan (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com

Boris Bershteyn (*pro hac vice*)
Karen Hoffman Lent (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001-8602
Telephone: 212.735.3000
boris.bershteyn@skadden.com
karen.lent@skadden.com

W. West Allen (NV Bar No. 5566)
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: 702.667.4843
wallen@howardandhoward.com

*Attorneys for Defendant*
*PIONEER NATURAL RESOURCES COMPANY*

/s/ *Michael W. Scarborough*
Michael W. Scarborough (*pro hac vice*)
Dylan I. Ballard (*pro hac vice*)
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979–6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald (*pro hac vice*)
Adam L. Hudes (*pro hac vice*)
Stephen M. Medlock (*pro hac vice*)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6500
cseebald@velaw.com
ahudes@velaw.com
smedlock@velaw.com

Kristen T. Gallagher (NV Bar No. 9561)
McDONALD CARANO LLP
2300 West Sahara Ave., Suite 1200
Las Vegas, NV 89102
kgallagher@mcdonaldcarano.com

*Attorneys for Defendant*
*PERMIAN RESOURCES CORPORATION*

/s/ *J. Colby Williams*
J. Colby Williams, Esq. (NV Bar No. 5549)
Philip R. Erwin, Esq. (NV Bar No. 11563)
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
jcw@cwlawlv.com
pre@cwlawlv.com

Marguerite M. Sullivan (*pro hac vice*)

/s/ *Christopher E. Ondeck*
Christopher E. Ondeck (*pro hac vice*)
Stephen R. Chuk (*pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
schuk@proskauer.com

Kyle A. Casazza (*pro hac vice*)

[12] The *pro hac vice* designations reflect the admission status of counsel in *Rosenbaum*, Case No. 2:24-cv-00103-MMD-MDC. *Pro hac vice* applications in the other related cases are forthcoming to the extent required by the Court.

LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Marguerite.Sullivan@lw.com

Lawrence E. Buterman (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Lawrence.Buterman@lw.com

*Attorneys for Defendant*
*CHESAPEAKE ENERGY CORPORATION*

PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 284-5677
kcasazza@proskauer.com

Michael Burrage (*pro hac vice*)
WHITTEN BURRAGE
512 North Broadway Avenue, Ste 300
Oklahoma City, OK 73102
Telephone: (888) 783-0351
mburrage@whittenburragelaw.com

*Attorneys for Defendant*
*CONTINENTAL RESOURCES, INC.*

*/s/ Kristen L. Martini*
Kristen L. Martini (NV Bar No. 11272)
E. Leif Reid (NV Bar No. 5750)
LEWIS ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (775) 321-3415
lreid@lewisroca.com

Jeffrey L. Kessler (*pro hac vice*)
Jeffrey J. Amato (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
jkessler@winston.com
jamato@winston.com

Thomas M. Melsheimer (*pro hac vice*)
Thomas B. Walsh, IV (*pro hac vice*)
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (212) 294-6700
tmelsheimer@winston.com
twalsh@winston.com

*Attorneys for Defendant*
*DIAMONDBACK ENERGY, INC.*

*/s/ John M. Taladay*
John M. Taladay (*pro hac vice*)
Christopher Wilson (*pro hac vice*)
Kelsey Paine (*pro hac vice*)
Megan Tankel (*pro hac vice*)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001-5692
Telephone: (202) 639-7909
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com
megan.tankel@bakerbotts.com

James J. Pisanelli, Esq. (NV Bar No. 4027)
Debra L. Spinelli, Esq. (NV Bar No. 9695)
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
jjp@pisanellibice.com
dls@pisanellibice.com

*Counsel for Defendant*
*EOG RESOURCES, INC.*

*/s/ Nicholas J. Santoro*
Nicholas J. Santoro (NV Bar No. 532)
F. Thomas Edwards (NV Bar No. 9549)
HOLLEY DRIGGS LTD
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 791-0308
nsantoro@nevadafirm.com

*/s/ Patrick G. Byrne*
Patrick G. Byrne (NV Bar No. 7636)
Bradley T. Austin (NV Bar No. 13064)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5200
pbyrne@swlaw.com

tedwards@nevadafirm.com

Kevin S. Schwartz (*pro hac vice*)
David A. Papirnik (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
kschwartz@wlrk.com
dapapirnik@wlrk.com

*Attorneys for Defendant*
*HESS CORPORATION*

baustin@swlaw.com

Devora W. Allon (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com
Telephone: 212-446-5967

Jeffrey J. Zeiger (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
jzeiger@kirkland.com
Telephone: 312-862-3237

Akhil K. Gola (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
akhil.gola@kirkland.com
Telephone: 202-389-3256

*Attorneys for Defendant*
*OCCIDENTAL PETROLEUM CORPORATION*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this date, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

DATED: April 26, 2024

GIBSON, DUNN & CRUTCHER LLP

*/s/ Samuel G. Liversidge*
Samuel G. Liversidge

*Attorneys for Defendant*
*PIONEER NATURAL RESOURCES COMPANY*